STATE v. B. B. WILSON, JR.

(Filed 10 July 1964.)

**1. Constitutional Law § 29—**

A valid indictment returned by a legally constituted grand jury is an essential of jurisdiction.

**2. Constitutional Law § 29; Grand Jury § 1—**

Where, on motion to quash the bill of indictment on the ground that members of defendant's race had been arbitrarily excluded from the grand jury, it appears that nearly one-fourth of the population of the county in question is of the Negro race and that only two or three Negroes had served on the grand jury of the county within the last seven years, there is a *prima facie* showing of discrimination, and testimony of county officials to the contrary is insufficient to overcome such *prima facie* showing, but there must be competent evidence of nondiscrimination, and if the evidence is conflicting, findings by the court. In the absence of such evidence the indictment must be quashed.

**3. Same—**

While the burden of proving discriminatory jury practices is upon defendant, this presumption does not relieve the prosecuting attorney of the duty of going forward with the evidence when the defendant has made out a *prima facie* case.

**4. Same; Jury § 3—**

Statutory provisions in this State, respecting the qualifications, selection, listing, drawing and attendance of jurors is fair and nondiscriminatory and meets all constitutional tests. G.S. 9-1, G.S. 9-3, G.S. 9-4, G.S. 9-7, G.S. 9-24. Constitution of North Carolina, Art. I, § 17; Fourteenth Amendment to the Constitution of the United States.

**5. Same—**

A person has no right to insist that he be indicted or tried by juries composed of persons of his race or on which persons of his race are represented in any proportion, but only that the juries be selected from all qualified persons regardless of race, and that no person of his race be systematically excluded therefrom.

**6. Same—**

A jury list is not perforce discriminatory because it is made from the tax list.

**7. Same—**

    If former errors and practices in the selection of juries are eliminated, such former errors cannot effect the validity of an indictment returned after proper revisal of the system for the selection of jurors.

**8. Indictment and Warrant § 16—**

    Quashal of an indictment for insufficient showing that members of defendant's race had not been arbitrarily excluded from the jury list does not entitle defendant to his discharge, but he may be held until an indictment is returned by an unexceptional grand jury.

APPEAL by defendant from *Martin, S. J.,* July 1963 Mixed Session of CLEVELAND.

This is a criminal case. Defendant, a Negro male, age 16, was indicted by the Cleveland County grand jury for the rape of a white woman. Plea: not guilty. Verdict: guilty, with a recommendation of life imprisonment. Judgment: imprisonment in State's prison for life.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*Charles V. Bell for defendant.*

MOORE, J. Before pleading to the indictment (*State v. Covington,* 258 N.C. 501, 128 S.E. 2d 827), defendant moved to quash the bill on the ground that members of his race had been for a long time systematically excluded from service on the grand juries of Cleveland County because of their race, and were systematically excluded from service on the grand jury which returned the true bill against him.

The true bill of indictment was found and returned on 8 July 1963. The trial was begun on 17 July 1963. The motion to quash was made 8 July 1963, and the hearing thereon was commenced 12 July 1963.

According to the 1960 Federal Census the population of Cleveland County is 66,048, of which number 15,250 are Negroes, 23%. Defendant's attorneys were permitted to inspect in open court the scrolls in the box containing the names of the jurors for the county, and they interposed no objection to the manner in which the names appeared on the scrolls. See *State v. Speller,* 229 N.C. 67, 47 S.E. 2d 537. Pursuant to instructions of the county commissioners, the then current jury list had been made under the supervision of the county auditor by copying the names from the county tax lists. There is a separate tax list for each township. The names of white and Negro taxpayers are in the same book for each township but are listed separately. The county auditor explained: "The reason we separate them is the State Board of Assessment requires that we make a separate report of poll tax as to

STATE *v.* WILSON.

White and Negro and Indians, and the only reason we separate them is just for our own convenience in preparing this report." The names · of taxpayers, white and Negro and male and female, with the exception of nonresidents and deceased persons, were included in the jury list. If taxes were listed to husband and wife, the names of both were put on the list. The list was cut into individual slips or scrolls of uniform size, each bearing only one person's name, and the scrolls were placed in the box. Names of taxpayers were included without regard to payment or nonpayment of taxes. The chairman of the Board of County Commissioners testified that the population of Cleveland County was 66,000 and he would assume that 20% of the Negroes are listed in the tax records. The county auditor stated that some names were marked off the list but he did not know how many Negro names were marked off, that it would be about the same per cent for Negroes as for whites. The clerk-typist who made the list said she didn't know how many Negroes were on the list, she would estimate the number at more than 500 and that if colored women owned property their names were included. The sheriff, who had served for 12 years and 3 years as deputy, stated: "I don't know how many Negroes have served on the grand jury, but I do know there has been a good many. . . . I really don't know whether a Negro woman in this county has ever served on the jury — grand or petit." One Negro served on the grand jury that returned the bill of indictment in question. Another served about a year earlier. The clerk of superior court testified that two or three Negroes had served on the grand jury during his seven years in office, but he had kept no record of it. Several Negro citizens testified that they were property owners and taxpayers but neither they nor their wives had ever been called for jury service. The county officials stated that in making the jury list there had been no discrimination on account of race.

The foregoing facts and testimony were introduced by defendant. The solicitor cross-examined defendant's witnesses, but offered no evidence. The judge made no findings of fact. With respect to the motion to quash, the record discloses no findings or ruling except the entry, "Motion denied." Upon many phases of the matter the evidence was uncertain and conflicting. In failing to find the material facts the court erred.

A valid indictment returned by a legally constituted grand jury is an essential of jurisdiction. *State v. Covington, supra.*

When, at a hearing upon a motion to quash the bill of indictment, there is a showing that a substantial percentage of the population of the county from which the grand jury that returned the bill was drawn is of the Negro race and that no Negroes, or only a token number, have

served on the grand juries of the county over a long period of time, such showing makes out a *prima facie* case of systematic exclusion of Negroes from service on the grand jury because of race. *Arnold v. North Carolina,* 12 L. Ed. 2d 77; *Eubanks v. Louisiana,* 356 U.S. 584; *Norris v. Alabama,* 294 U.S. 587. The mere denial by the officials charged with the duty of listing, selecting and summoning jurors that there was any intentional, arbitrary or systematic discrimination because of race, is not sufficient to overcome such *prima facie* case. *Hernandez v. Texas,* 347 U.S. 475; *Smith v. Texas,* 311 U.S. 128; *Norris v. Alabama, supra.* To overcome such *prima facie* case, there must be a showing by competent evidence that the institution and management of the jury system of the county is not in fact discriminatory. And if there is contradictory and conflicting evidence, the trial judge must make findings as to all material facts.

In *State v. Arnold,* 258 N.C. 563, 129 S.E. 2d 229, there was a motion to quash the indictment for racial discrimination in grand jury service. Defendant introduced evidence that there were on the tax lists 12,250 whites and 4,819 Negroes, and 5,583 whites and 2,499 Negroes were subject to poll tax, that one Negro had served on the grand jury in 24 years, another had been selected but was excused, the panels drawn for court sessions usually contained 3 or 4 Negroes, and at one time 4 or 5. The State offered no evidence. This Court held that the defendant had "failed to carry the burden of showing facts which would permit a reasonable inference of purposeful racial discrimination." The Supreme Court of the United States allowed *certiorari* and reversed the holding of this Court, stating in a *per curiam* opinion: "This evidence was uncontradicted, the State cross-examining the witnesses but offering no evidence." Further: "The judgment below must be reversed. The 'testimony in itself made out a *prima facie* case of the denial of the equal protection which the Constitution guarantees.' *Norris v. Alabama,* 294 U.S. 587, 591." *Arnold v. North Carolina, supra.*

In the instant case, it clearly appears that nearly one-fourth of the population of Cleveland County is of the Negro race, two or three Negroes have served on the grand juries of Cleveland County within the last seven years. According to the authorities above cited this makes out a *prima facie* case of discrimination, and the testimony of county officials that there had been no intentional or systematic exclusion of Negroes because of race is insufficient to overcome the *prima facie* showing. The court below found no facts and established no basis for a determination that defendant's *prima facie* case had been overcome. The Supreme Court of North Carolina is not a fact-finding tri-

bunal, and we are not in a position on the present state of the record to determine whether racial discrimination with respect to jury service has *in fact* been practiced in Cleveland County. It is quite probable that it has not; the presumption is that public officials have performed their duties in a fair, legal and constitutional manner.

The findings of fact of a trial judge, in a hearing on such motion to quash, are conclusive on appeal if supported by competent evidence. *State v. Perry,* 250 N.C. 119, 108 S.E. 2d 447; *State v. Speller, supra; State v. Henderson,* 216 N.C. 99, 3 S.E. 2d 357; *State v. Bell,* 212 N.C. 20, 192 S.E. 852. The findings of a trial judge will not be disturbed unless so grossly wrong as to amount to an infraction of constitutional guaranties. *State v. Cooper,* 205 N.C. 657, 172 S.E. 199. In *Akins v. Texas,* 325 U.S. 398, it is said: ". . . the trier of fact who heard the witnesses in full and observed their demeanor on the stand has a better opportunity than a reviewing court to reach a correct conclusion . . ." Further: ". . . we accord in that examination (of the evidence) great respect to the conclusions of the state judiciary, *Pierre v. Louisiana,* 306 U.S. 354, 358. That respect leads us to accept the conclusion of the trier on disputed issues 'unless it is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process.' *Lisenba v. California,* 314 U.S. 219, 238, or equal protection."

The burden of proving discriminatory jury practices is upon defendant. *State v. Covington,* 258 N.C. 495, 128 S.E. 2d 822; *Miller v. State,* 237 N.C. 29, 74 S.E. 2d 513; *Akins v. Texas, supra.* But this does not relieve the prosecuting attorney of the duty of going forward with the evidence when the defendant has made out a *prima facie* case. Reliance solely upon the burden of proof rule and the consequent failure of the State to offer evidence usually results in denying the judge the benefit of the crucial facts and in arousing suspicion that there has been discrimination as alleged. In the instant case, for example, the evidence fails to show the number of white and Negro taxpayers, the number of white and Negro males subject to poll tax, the number of white and Negro women taxpayers, the number of white persons (male and female) on the jury list, the number of Negroes (male and female) on the jury list, the manner of drawing jury panels for sessions of court, whether any names drawn from the box for jury service were discarded, laid aside or deliberately not summoned, the manner of selecting grand juries, the panels actually drawn over a reasonable period prior to the current court session with disclosure of their racial composition, and lists of grand juries previously in service with disclosure of their racial composition. If these and other pertinent definite

facts were presented, trial judges could make clear findings of fact and more readily reach proper conclusions.

We are aware that to present such information time-consuming preparation and some expense will be involved. But the solicitor should not hesitate to request the court for allowance of preparation time when motions to quash are interposed. As to expense, we are of the opinion that the cost of such preparation will prove to be much less than the cost of a retrial of the case — a result so often experienced when the facts are not fully developed.

The statutory provisions of this State (G.S., Ch. 9) respecting qualifications, selection, listing, drawing and attendance of jurors is fair and nondiscriminatory and meet all constitutional tests. *Brown v. Allen,* 344 U.S. 443, 466-474. The statutes leave little to the exercise of official discretion, except that of the commissioners in passing upon the qualifications of prospective jurors in making the jury list, and that of the presiding judge in excusing attending jurors from service for good cause. The panel for a session of court is drawn from the box by a child not more than ten years of age. G.S. 9-3. When a panel is drawn for a session of court (G.S. 9-3; G.S. 9-4) no scroll drawn may be discarded except pursuant to G.S. 9-7. The right of rejection for want of good moral character or sufficient intelligence is available only to the commissioners when the list is being prepared. G.S. 9-1. See *State v. Speller, supra.* Only the presiding judge has authority to excuse a juror drawn for the session panel (except in those special instances, provided by statute, when the clerk may excuse. G.S. 9-19). Grand jurors are drawn from the regular session panel by a child not more than ten years of age. G.S. 9-24.

Since the matters dealt with in this opinion will probably recur often in our courts, the following rules of law will bear repetition. The provisions of the "Law of the Land" clause (Art. 1, § 17) of the Constitution of North Carolina and the Fourteenth Amendment to the Constitution of the United States afford protection against discriminatory actions of officials in administering the law. *Norris v. Alabama, supra.* Representation on the juries in proportion to racial population is not required. A citizen has no right to insist that he be indicted or tried by juries composed of persons of his race, nor to have a person of his race on the juries which indict and try him. But he has the right to be indicted and tried by juries from which persons of his race have not been systematically excluded — juries selected from all qualified persons regardless of race. *Miller v. State, supra; State v. Brown,* 233 N.C. 202, 63 S.E. 2d 99; *State v. Koritz,* 227 N.C. 552, 43 S.E. 2d 77; *Hernandez v. Texas, supra; Brown v. Allen, supra.* A jury list is not discriminatory

merely because it is made from the tax list. The tax list is perhaps the most comprehensive list available for the names of male citizens. *Brown v. Allen, supra.* But the commissioners are not limited to the use of the tax list (G.S. 9-1), and the use of other lists might result in the selection of more women jurors. "Former errors cannot invalidate future trials." *Brown v. Allen, supra.* If discrimination was formerly practiced, but the jury list was thereafter properly revised and the law administered without discrimination, the former errors and practices would not affect the validity of an indictment returned after proper revisal of the jury system.

In the absence of findings of fact sufficient in purport and content to overcome defendant's *prima facie* showing of racial discrimination, the bill of indictment must be quashed. While it is not for us to weigh the evidence and find facts, it seems extremely doubtful that the facts presented at the hearing on the motion to quash would support findings sufficient to overcome defendant's *prima facie* showing. The indictment is quashed. The verdict and judgment are vacated for want of a showing that the indictment was valid. It does not follow that defendant is entitled to his discharge. He may be held until an indictment is returned by an unexceptionable grand jury, upon which indictment he may be tried for the offense alleged. *State v. Speller, supra.*

Reversed.