STATE OF NORTH CAROLINA v. JULIUS CORNELL, LARRY LITTLE AND GRADY FULLER

No. 9

(Filed 12 April 1972)

1. **Evidence § 31— best evidence rule**

Under the best evidence rule, a writing is the best evidence of its contents, and the writing itself must ordinarily be produced unless its nonproduction is excused; however, this rule applies only where the contents or terms of the writing are in question.

State v. Cornell

**2. Evidence § 31— best evidence rule — personal observations**

The best evidence rule did not prohibit a courtroom clerk from testifying as to his personal observations regarding the racial composition of jury venires during a specific period of time simply because the clerk had made a record of his observations.

**3. Criminal Law § 162— objection to evidence — specified ground — appellate review**

When an objection to evidence is made on a specific ground, the competency of the evidence will be determined on appeal solely on the basis of the grounds specified.

**4. Criminal Law § 175— findings of fact — conclusions of law — appellate review**

While the trial court's findings of fact will not be disturbed on appeal if there is competent evidence to support them, the trial court's conclusions of law are subject to review, and where rulings are made under a misapprehension of the law, the order of the trial judge may be vacated and the case remanded for further proceedings, modified or reversed, as the rights of the parties and the applicable law may require.

**5. Constitutional Law § 29; Grand Jury § 3; Jury § 7— systematic exclusion of Negroes**

If the conviction of a Negro is based on an indictment of a grand jury or the verdict of a petit jury from which Negroes were excluded by reason of their race, the conviction cannot stand.

**6. Constitutional Law § 29; Jury § 7— racial discrimination in jury — burden of proof**

If a motion to quash alleges racial discrimination in the composition of the jury, the burden is upon defendant to establish it; but once a *prima facie* case of racial discrimination is established, the burden of going forward with rebuttal evidence is upon the State.

**7. Constitutional Law § 29; Grand Jury § 3; Jury § 7— racial composition of jury**

A defendant is not entitled to demand a proportionate number of his race on the jury which tries him or on the venire from which petit jurors are drawn.

**8. Constitutional Law § 29; Grand Jury § 3; Jury § 7— racial composition of jury — officials' denial of discrimination**

The mere denial by officials charged with the duty of listing and summoning jurors that there was no intentional, arbitrary or systematic discrimination on the ground of race is not sufficient to overcome a *prima facie* case.

**9. Constitutional Law § 29; Grand Jury § 3; Jury § 7— jury source — tax list**

A jury list is not discriminatory or unlawful because it is drawn from the tax list of the county, and the jury commission is not limited to the sources specifically designated by the statute.

State v. Cornell

10. **Constitutional Law § 29; Grand Jury § 3; Jury § 7— grand and petit juries — racial composition — systematic exclusion**

A person has no right to be indicted or tried by a jury of his own race or even to have a representative of his race on the jury; he does have a right to be tried by a jury from which members of his own race have not been systematically and arbitrarily excluded.

11. **Constitutional Law § 29; Jury § 7— systematic exclusion of Negroes — insufficiency of evidence**

Defendants' evidence that the black adult population of the county amounted to 20% of the total county population and that during the biennium beginning January 1970 approximately 10% of the petit jurors appearing for service in the courtroom were Negro, *held* insufficient to make out a *prima facie* case of racial discrimination.

12. **Constitutional Law § 29; Jury § 7— systematic exclusion of Negroes — prima facie case — absence of necessity for State to go forward**

Even if defendants made out a *prima facie* case of racial discrimination on the theory of underrepresentation of Negroes on the juries, defendants' own evidence relieved the State of the burden of going forward with the evidence where defendants exhausted the State's sources of information and their evidence shows that any disparity in racial representation on juries of the county did not result from discrimination in the preparation and drawing of the jury list, the State not being required to repetitiously present evidence already elicited by defendants.

13. **Constitutional Law § 29; Grand Jury § 3; Jury § 7— address on jury list card — black or white neighborhood — opportunity for discrimination**

Testimony by jury commissioners that, in some instances, they could determine from the address shown on the raw jury list card that the person named thereon lived in a predominantly black or predominantly white neighborhood did not show an "opportunity for discrimination" sufficient to make out a *prima facie* case of racial discrimination.

14. **Constitutional Law § 29; Grand Jury § 3; Jury § 7— jury list — absence of persons 18 to 21 years old**

The absence from the jury list of the names of persons between the ages of 18 and 21 during the period from 21 July 1971, the effective date of the amendment of G.S. 9-3 lowering the age requirement for jurors from 21 years to 18 years, and 21 September 1971, the date of defendants' trial, is not unreasonable and does not constitute systematic exclusion of this age group from jury service.

15. **Constitutional Law § 29; Grand Jury § 3; Jury § 7— selection and drawing of jurors — constitutionality of statutes**

The North Carolina statutory plan for the selection and drawing of jurors is constitutional and provides a jury system completely free of discrimination to any cognizable group. G.S. Ch. 9, Art. I.

State v. Cornell

ON *certiorari* to the North Carolina Court of Appeals prior to determination of appeal, from *Long, J.*, at the 20 September 1971 Criminal Session of FORSYTH Superior Court.

Separate bills of indictment were returned by the Forsyth County Grand Jury charging defendants Cornell and Little with accessory after the fact of felonious larceny, and defendant Fuller with two counts of felonious assault with a firearm upon a law enforcement officer in violation of G.S. 14-34.2, and felonious larceny. Upon motions of defense counsel, the charges were consolidated for trial. On 3 May 1971 counsel for defendants filed motions to quash each of the indictments and to quash the petit jury venire on the grounds, *inter alia,* that the method of selecting the grand and petit jurors excluded blacks, women, daily wage earners, and younger persons in the community, and thereby denied defendants their constitutional right to be tried by a jury of their peers.

The cases came on for hearing before Judge Long on 22 September 1971, and at that time defendants amended their motions to include as a further ground for quashal the fact that the Forsyth County Jury selection process excluded persons under twenty-one years of age.

Defendants offered the testimony of Wayne C. Shugart, Guy L. Scott and S. C. Cable, who were members of the Forsyth County Jury Commission during the period October 1969 to the date of hearing. The testimony of these witnesses tended to show that during the months of October and November 1969, pursuant to statute, they had prepared a jury list to be used for the biennium beginning January 1, 1970. In order to compile the jury list the commissioners had instructed John Click, the data processing system manager for Forsyth County, to prepare a raw jury list by programming the computer to take every fourth name from the Forsyth County tax list and every twelfth name from the voter registration list. The computer was fed cards containing information concerning each taxpayer and each registered voter. The taxpayer card had no information as to race, but the voter registration card denominated the race of each individual because of certain federal requirements. The cards fed to the computer were not seen by the members of the Jury Commission. Each of the raw list cards obtained from the computer contained only the name and address of the in-

dividual. This list contained 7,963 names from the voter list, and 18,258 names from the tax list. This total list of 26,221 names was submitted to the Jury Commission, and the members of that commission deleted duplications in names, names of persons known to have left the county or to be deceased, and the names of persons known to be under twenty-one years of age. The deletion of names of persons known to be under twenty-one years of age resulted from the then existing statutory requirement that a juror be at least twenty-one years of age. The commissioners also deleted names of persons known to be physically or mentally incompetent to serve as jurors, the names of persons found on the "lunacy" docket, and the names of persons known to be convicted felons. The Jury Commission purged 5,842 names from the original list because of one or more of the above stated reasons.

A larger number of names was taken from the tax list because it was more accurate since it was reconstituted annually. Each member of the Jury Commission testified unequivocally that he did not consider race or economic status in preparing the list. However, each acknowledged that in some instances race or economic status could be determined by the individual's address. The commissioners had not changed the list so as to include persons between the ages of eighteen and twenty-one since the effective date of the statutory amendment allowing persons eighteen years of age or over to serve on juries.

The testimony of Eunice Ayers, Register of Deeds of Forsyth County, and A. E. Blackburn, Clerk of Superior Court of Forsyth County, tended to show that, pursuant to statute, the Jury Commission delivered to the Register of Deeds an alphabetized and numerically arranged jury list, together with the cards deleted by the Jury Commission. The Register of Deeds kept these jury cards under lock and key. The Clerk of Superior Court kept a round metal basket containing numbered discs in the same number as there were names on the jury list. The Clerk of Superior Court, at least thirty days prior to each session of court, drew from the metal basket discs equal to the number of jurors required for the sessions of district or superior court. The numbers from these discs were furnished to the Register of Deeds, and she matched the numbers drawn with the numbered and alphabetized jury list, and thereafter

furnished the Sheriff a list showing the names and addresses of the prospective jurors for summoning by the Sheriff. The Sheriff made return to the Clerk of Superior Court.

Nathan W. Lyndon testified that he served as Foreman of the Forsyth County Grand Jury from 4 January 1971 until 14 June 1971. During that period of time there were three members of the black race serving on the 18-member Grand Jury.

Michael R. Foltz, a deputy clerk of superior court of Forsyth County, testified that since 27 July 1967 he had been in position to observe the racial composition of the venire for petit jury service due to his employment as courtroom clerk. Of his own volition he kept records of the venires appearing between 31 May 1971 and 31 August 1971. He testified that he had kept written records concerning this information but had inadvertently left the records at home. He was allowed, over objection, to testify as to his recollection of the racial composition of the petit jury venires during that period. We quote a portion of this witness' testimony:

Q. Do you recall whether your records reflect how many persons that appeared in this courtroom for petit jury duty since May 31 of this year?

A. Yes, sir.

Q. Approximately how many persons?

A. Between May 31, 1971 and the last day of August 1971, three hundred twenty-four (324) people have appeared to serve as jurors.

Q. And those three hundred, do your records reflect how many were black?

MR. YEAGER: Objection. I object, your Honor, these aren't official records.

COURT: Objection overruled.

A. Thirty-two.

State v. Cornell

Objection overruled. State, in apt time excepted.

EXCEPTION No. 1.

The witness further testified that he based the racial determination on skin coloration, and that his designations were actually in the categories of white and non-white. He stated that he had kept records during the current week of court, and that the venire for that week contained thirty-four persons, four of whom were non-white.

Defendants offered other testimony and documentary evidence which tended to show:

(1) On 1 January 1971, according to the U. S. Census figures, blacks comprised 22.3% of the total population of Forsyth County. The same census figures show that 19.8% of the persons over twenty-five years of age in Forsyth County were blacks, and that 20.9% of all persons over fifteen years of age in Forsyth County were black.

(2) In November 1969 Negroes comprised 20.4% of the qualified voters in Forsyth County.

There was no evidence as to percentage of Negroes appearing on the tax list, because the tax list contained no racial designation.

The State offered no evidence.

Judge Long thereupon entered the following order:

In regard to the motions of the defendants to quash the indictments in these cases and to quash the jury venire on the grounds that black persons and persons under twenty-one years of age were systematically excluded from the jury list from which a grand jury was selected and from which the petit jury is to be selected, the court makes the following findings of facts:

1. That in November, 1969, the Forsyth County Jury Commission prepared the current jury lists from which the Grand and Petit Juries involved in these cases were or would be drawn;

2. That the jury commissioners selected every fourth name on the Forsyth County tax list and every twelfth name of the Forsyth Voter registration list to obtain an unpurged list of prospective jurors;

State v. Cornell

3. That on January 1, 1970, when the current list was put into use, the percentage of Negroes in the Forsyth County population was approximately 22.3 percent according to the United States census figures. Although there is no evidence in the record as to the percentage of Negroes in the over-twenty-one age group at that time, census figures show that Negroes constituted 19.8 percent of all persons over twenty-five years of age and 20.9 percent of all persons then over fifteen years of age and who would now (two years later) be seventeen years of age or older;

4. That 20.4 percent of the qualified voters in November, 1969, were Negroes. There is no evidence as to the percentage of taxpayers who were Negroes;

(5. That since May 31, 1971, three hundred twenty-four jurors have reported pursuant to summons, for jury service in the criminal courts of this county. Of that number only 32 or 9.9 percent have been black and the only evidence on the point indicated that from the period of January, 1970 up to May 31, 1971, the percentage of black jurors has been approximately ten percent;)

EXCEPTION No. 3.

(6. That the State has offered no evidence to explain the discrepancy between the approximately twenty percent Negro population in the community as a whole and the approximatetly ten percent Negro population of the jurors drawn for service;)                    EXCEPTION No. 4.

(7. The court further finds as a fact that no persons under twenty-one years of age in November, 1969, were included in the jury list and no persons reaching said age since November, 1969, have been added to the ·jury list. That the General Assembly of North Carolina enacted a law on July 21, 1971, lowering the age of majority from twenty-one to eighteen years and lowering the age of qualification for jury service from twenty-one to eighteen years. That since that date no names of persons under twenty-one years of age have been added to the jury list. That under such circumstances there would be no possibility that any person under the age of twenty-two years eight months would serve on this jury involved with the trial of the

three defendants, two of whom fall at or under such age.)
EXCEPTION NO. 5.

(Upon such findings of fact, the court concludes that under the United States Supreme Court decisions of *Whitus vs. Georgia*, 385 U.S. 545, and *Sims vs. Georgia*, 389 U.S. 404, and *Jones vs. Georgia*, 389 U.S. 24, and under the applicable provisions of the United States Constitution, the defendants are entitled to allowance of their motions to quash their bills of indictment and to quash the petit jury venire.)                    EXCEPTION NO. 6.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that:

(1. The bills of indictment against these three defendants in these cases are hereby quashed;)    EXCEPTION NO. 7.

(2. That the jury commissioners for Forsyth County are hereby ordered to prepare a new jury list from which a venire of jurors may be drawn for grand and petit jury service. It is suggested that the jury commissioners give serious consideration to the possibility of using a broad-based name list such as the United States census records as an additional source of names of persons who might be summoned for jury service;)    EXCEPTION NO. 8.

(3. That the solicitor may proceed with new bills of indictment and with trial of the defendants after a new jury list has been prepared and a new grand jury has been sworn.)    EXCEPTION NO. 9.

This the 27th day of September, 1971.

JAMES M. LONG
Judge Presiding

EXCEPTION NO. 10.

The State appealed.

*Attorney General Morgan, Assistant Attorney General Safron, and Associate Attorney Speas for the State.*

*James E. Ferguson II (Chambers, Stein, Ferguson & Lanning) and James E. Keenan (Paul & Keenan) for defendants.*

BRANCH, Justice.

The primary question presented by this appeal is whether the trial judge correctly quashed the bills of indictment and the petit jury venire on the grounds of systematic and arbitrary exclusion of qualified Negroes from the jury list.

[1, 2] The State first contends that the trial judge erred in basing critical findings of fact on the testimony of the witness Foltz as to his recollection concerning the contents of records which he had prepared. The State seeks to invoke the best evidence rule, which declares that a writing is the best evidence of its contents. It is ordinarily required that the writing itself be produced unless its nonproduction is excused. *In re Will of Knight,* 250 N.C. 634, 109 S.E. 2d 470; *Harris v. Singletary,* 193 N.C. 583, 137 S.E. 724. However, this rule applies only where the contents or terms of the document are in question. *State v. Ray,* 209 N.C. 772, 184 S.E. 836; *Overby v. Overby,* 272 N.C. 636, 158 S.E. 2d 799.

In *State v. Ray, supra,* this Court stated:

"The appellant directs a number of exceptions to the court's permitting the State to introduce, over his objection, parol evidence to establish the contents of Norfolk Southern freight car No. 20635, when there was evidence to the effect that the records of the railroad company showed such contents, upon the theory that such records were the best evidence of the fact sought to be proved. While it is generally agreed that writings themselves furnish the best evidence of their contents, the 'best evidence rule' has no application here, since the fact sought to be proved was whether certain cigarettes had been put in a certain car, and had no relation whatsoever to the contents of any writing or record. No problem of primary and secondary evidence was presented. The making of a record did not prohibit a witness, who loaded the car and saw what went into it, from testifying as to its contents."

[3] We do not think that the witness Foltz was prohibited from testifying as to his recollection of what he had personally observed simply because he had made a record of his observations. Further, the State runs afoul of the technical rule which declares that when an objection to evidence is made on a specific ground, the competency of the evidence will be determined

on appeal solely on the basis of the grounds specified. Existence of another ground for the objection makes no difference unless the evidence was completely without purpose. *Pratt v. Bishop,* 257 N.C. 486, 126 S.E. 2d 597; Stansbury, N. C. Evidence, § 27 (2d ed., 1963) Here the Solicitor based his objection on the specific ground that the records in question were not official.

We therefore conclude that the evidence of witness Foltz was competent and admissible.

[4]   It is well recognized that the trial court's findings of fact will not be disturbed if there is competent evidence to support them. However, the trial court's conclusions of law are subject to review, and where rulings are made under a misapprehension of the law, the orders or rulings of the trial judge may be vacated and the case remanded for further proceedings, modified or reversed, as the rights of the parties and the applicable law may require. *Harrelson v. Insurance Co.,* 272 N.C. 603, 158 S.E. 2d 812; *Horton v. Redevelopment Commission,* 264 N.C. 1, 140 S.E. 2d 728; *Insurance Co. v. Lambeth,* 250 N.C. 1, 180 S.E. 2d 36; *Morris v. Wilkins,* 241 N.C. 507, 85 S.E. 2d 892.

We first consider whether the trial judge acted under a misapprehension of the law when he concluded:

> "Upon such findings of fact, the court concludes that under the United States Supreme Court decisions of *Whitus vs. Georgia,* 385 U.S. 545, *Sims vs. Georgia,* 389 U.S. 404, and *Jones vs. Georgia,* 389 U.S. 24, and under the applicable provisions of the United States Constitution, the defendants are entitled to allowance of their motions to quash their bills of indictment and to quash the petit jury venire."

[5-7]   In *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765, this Court unanimously approved the following statement:

> "Both state and federal courts have long approved the following propositions:
>
> 1. If the conviction of a Negro is based on an indictment of a grand jury or the verdict of a petit jury from which Negroes were excluded by reason of their race, the conviction cannot stand. *State v. Ray,* 274 N.C. 556, 164 S.E. 2d 457; *State v. Wright,* 274 N.C. 380, 163 S.E. 2d

897; *State v. Brown,* 271 N.C. 250, 156 S.E. 2d 272; *State v. Lowry* and *State v. Mallory,* 263 N.C. 536, 139 S.E. 2d 870; *Whitus v. Georgia,* 385 U.S. 545, 17 L.ed. 2d 599, 87 S.Ct. 643; *Arnold v. North Carolina,* 376 U.S. 773, 12 L.ed. 2d 77, 84 S.Ct. 1032; *Eubanks v. Louisiana,* 356 U.S. 584, 2 L.ed. 2d 991, 78 S.Ct. 970; *Reece v. Georgia,* 350 U.S. 85, 100 L.ed. 77, 76 S.Ct. 167; *Shepherd v. Florida,* 341 U.S. 50, 95 L.ed. 740, 71 S.Ct. 549; *Cassell v. Texas,* 339 U.S. 282, 94 L.ed. 839, 70 S.Ct. 629.

2. If the motion to quash alleges racial discrimination in the composition of the jury, the burden is upon the defendant to establish it. *State v. Ray, supra; State v. Yoes,* 271 N.C. 616, 157 S.E. 2d 386; *State v. Brown, supra; Whitus v. Georgia, supra; Akins v. Texas,* 325 U.S. 398, 89 L.ed. 1692, 65 S.Ct. 1276; *Fay v. New York,* 332 U.S. 261, 91 L.ed. 2043, 67 S.Ct. 1613. But once he establishes a *prima facie* case of racial discrimination, the burden of going forward with rebuttal evidence is upon the State. *State v. Wilson,* 262 N.C. 419, 137 S.E. 2d 109; *State v. Ray, supra.*

3. A defendant is not entitled to demand a proportionate number of his race on the jury which tries him nor on the venire from which petit jurors are drawn. *Swain v. Alabama,* 380 U.S. 202, 13 L.ed. 2d 759, 85 S.Ct. 824; *State v. Wilson, supra; State v. Arnold,* 258 N.C. 563, 129 S.E. 2d 229 reversed on other grounds, 376 U.S. 773, 12 L.ed. 2d 77, 84 S.Ct. 1032."

The following propositions of law are equally well established:

[8]  (1) The mere denial by officials charged with the duty of listing and summoning jurors that there was no intentional, arbitrary or systematic discrimination on the ground of race is not sufficient to overcome a prima facie case. *State v. Wilson,* 262 N.C. 419, 137 S.E. 2d 109; *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.ed. 866; *Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.ed. 84; *Norris v. Alabama,* 294 U.S. 587, 55 S.Ct. 579, 79 L.ed. 1074.

[9]  (2) A jury list is not discriminatory or unlawful because it is drawn from the tax list of the county. Nor is a jury commission limited to the sources specifically designated by the statute. *State v. Yoes* and *Hale v. State,* 271 N.C. 616, 157 S.E.

2d 386; *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 379, 97 L.ed. 469; *State v. Wilson, supra.*

[10]  (3) A person has no right to be indicted or tried by a jury of his own race or even to have a representative of his race on the jury. He does have the constitutional right to be tried by a jury from which members of his own race have not been systematically and arbitrarily excluded. *State v. Yoes, supra; State v. Wilson, supra; Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.ed. 2d 759; *Gibson v. Mississippi,* 162 U.S. 565, 16 S.Ct. 904, 40 L.ed. 1075.

The trial court and defendants rely upon the cases of *Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.ed. 2d 599; *Sims v. Georgia,* 389 U.S. 404, 88 S.Ct. 523, 19 L.ed. 2d 634; *Jones v. Georgia,* 389 U.S. 24, 88 S.Ct. 4, 19 L.ed. 2d 25, to support the order quashing the indictments and the jury venire. *Jones v. Georgia, supra,* and *Sims v. Georgia, supra,* were per curiam opinions factually similar to and decided on the authority of *Whitus v. Georgia, supra.*

In *Whitus v. Georgia, supra,* defendant attacked his murder conviction on the ground that the State systematically excluded members of his race from the grand jury which indicted him and the petit jury which convicted him. There, the jury commissioners made up the jury list from tax records which listed Negroes on yellow paper and whites on white paper. Later, the same commission reconstituted the jury box with names taken from a tax listing which denoted the names of Negro taxpayers by a "(c)" being placed opposite the name. The population of the county was 27.1% black, 42.6% of the potential (by age and sex) jurors were black. One of nineteen grand jurors was black, and seven of ninety petit jurors were black. The State offered no evidence tending to show or explain that the discrepancy was not the result of arbitrary, systematic exclusion of blacks. The United States Supreme Court, in reversing the judgments, *inter alia,* stated:

> "Under such a system the opportunity for discrimination was present and we cannot say on this record that it was not resorted to by the commissioners. Indeed, the disparity between the percentage of Negroes on the tax digest (27.1%) and that of the grand jury venire (9.1%) and the petit jury venire (7.8%) strongly points to this conclusion. Although the system of selection used here had been

State v. Cornell

specifically condemned by the Court of Appeals, the State offered no testimony as to why it was continued on retrial. The State offered no explanation for the disparity between the percentage of Negroes on the tax digest and those on the venires, although the digest must have included the names of large numbers of 'upright and intelligent' Negroes as the statutory qualification required. In any event the State failed to offer any testimony indicating that the 27.1% of Negroes on the tax digest were not fully qualified. The State, therefore, failed to meet the burden of rebutting the petitioners' prima facie case."

[11] In instant case defendants contend that their showing that the black adult population in Forsyth County amounted to approximately 20% of the population of that county, when coupled with the testimony of the witness Foltz to the effect that during the biennium beginning January 1970 approximately 10% of the petit jurors appearing for service in the courtroom in which he was employed were Negro, made out a prima facie case of racial discrimination.

The State, on the other hand, contends that such disparity, standing alone, is not sufficient to make out a prima facie case of racial discrimination.

The case of *Swain v. Alabama, supra,* strongly supports the State's argument. There the petitioner sought to quash the indictment and strike the trial jury venire on the ground of racial discrimination in the selection of all juries. He presented evidence showing that Negro males over twenty-one years of age constituted 26% of the age group in the county in which he was tried and that only 10% to 15% of the grand and petit juries drawn from the jury books since 1953 had been Negroes. There were four or five Negroes on the Grand Jury panel of approximately thirty-five persons which indicted defendant and there were eight Negroes on the petit jury venire, although none actually served in defendant's trial. The law of Alabama required the commissioners to place on the jury roll all male citizens over twenty-one years of age, reputed to be honest, intelligent men—esteemed for their integrity, good character and sound judgment. Each commissioner produced names of persons from various lists who in his judgment were qualified to serve as jurors. The United States Supreme Court held that the trial court properly denied defendant's motion

State v. Cornell

to quash. Mr. Justice White delivered the Court's majority opinion, and Mr. Justice Goldberg, with whom Chief Justice Warren and Mr. Justice Douglas joined, delivered a separate dissenting opinion. The majority opinion, in part, stated:

" . . . We cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%. See *Thomas v. Texas,* 212 U.S. 278, 283, 53 L.ed. 512, 514, 29 S.Ct. 393; *Akins v. Texas,* 325 U.S. 398, 89 L.ed. 1692, 65 S.Ct. 1276; *Cassell v. Texas,* 339 U.S. 282, 94 L.ed. 839, 70 S.Ct. 629. . . . There is no evidence that the commissioners applied different standards of qualifications to the Negro community than they did to the white community. Nor was there any meaningful attempt to demonstrate that the same proportion of Negroes qualified under the standards being administered by the commissioners. It is not clear from the record that the commissioners even knew how many Negroes were in their respective areas, or on the jury roll or on the venires drawn from the jury box. The overall percentage disparity has been small, and reflects no studied attempt to include or exclude a specified number of Negroes. . . . We do not think that the burden of proof was carried by petitioner in this case."

The basis for the dissenting opinion is that the showing of the disparity in racial representation of the jurors made out a prima facie case, and that since the State had greater access to the evidence which would negative its involvement in discriminatory jury selection, the State must assume the burden of going forward with evidence to show how the exclusion came about.

[11-13] *Swain v. Alabama, supra,* amply supports a holding under the facts of this case that the showing of underrepresentation of Negroes on the juries of Forsyth County was not sufficient to establish a prima facie case of racial discrimination. Even had a prima facie case been made out on the theory of underrepresentation of Negroes on the juries, defendants' own evidence relieved the State of the burden of going forward with the evidence. Defendants also argue that the system of jury selection in Forsyth County presented "opportunity for discrimination" merely because the jury commissioners ad-

mitted that, in some instances, they could determine from the address shown on the raw jury list card that the person there named lived in a predominantly white or a predominantly black neighborhood. We note in passing that a person who would qualify to serve on a jury commission would of necessity possess this knowledge of his county in order to impose the objective statutory criteria in preparing the jury list.

In attacking the jury selection system, defendants offered the testimony of all members of the Forsyth County Jury Commission, the Clerk of Superior Court of Forsyth County and the Register of Deeds of Forsyth County. By offering this testimony defendants exhausted the State's sources of information and affirmatively showed that the officials assiduously complied with the provisions of Article I, Chapter 9 of the General Statutes. We note that former Chapter 9 in 1949 contained substantially the same procedures as now. It was declared constitutional in the case of *Brown v. Allen, supra,* and was labeled "fair and nondiscriminatory" by this Court in *State v. Wilson, supra.* The rewrite of that chapter creating a jury commission to act in lieu of the county commissioners, designating the voter registration records as a source for preparing jury lists, and making other unsubstantial changes, preserves and enhances the fair and nondiscriminatory nature of its provisions. Chapter 9, Article I, of the General Statutes as it existed at the times herein complained of was obviously designed to require a minimum exercise of official discretion and to insure maximum protection against arbitrary abuse of such discretion.

Defendants' evidence further shows that there was no such "opportunity for discrimination" in the selection of the Forsyth County jury list as was found in *Whitus* and that the individual jury commissioners did not remove any name from the raw jury list solely on the basis of suspected race of the named person.

Thus, defendants' evidence fully demonstrates that any disparity in racial representation on the juries of Forsyth County did not result from discrimination in the preparation and drawing of the jury list. The rationale of the prima facie rule does not require the State to repetitiously present evidence already elicited by defendants. It was, therefore, not necessary for the State to "go forward" with further evidence.

We are cognizant of the decision in *Alexander v. Louisiana,* 40 U.S.L.W. 4365 (U.S. April 3, 1972) based upon *Avery v. Georgia, supra,* and *Whitus v. Georgia, supra. Alexander* is also distinguishable from instant case because of the differences in the Louisiana and North Carolina jury selection processes.

The trial judge erred in quashing the bills of indictment and the petit jury venire on the ground of arbitrary and systematic exclusion of qualified Negroes from the jury list.

[14] The only remaining ground for quashal of the bills of indictment and the petit jury venire which defendants bring forward and argue in their brief, and to which they have directed evidence, is the exclusion from the jury list of persons eighteen years old but not twenty-one years old.

At the time the jury list was prepared by the Forsyth County Jury Commission, G.S. 9-3 provided:

> Qualifications of prospective jurors.—All persons are qualified to serve as jurors and to be included on the jury list who are citizens of the State and residents of the county, who have not served as jurors during the preceding two years, *who are twenty-one years of age or over,* who are physically and mentally competent, who have not been convicted of a felony or pleaded nolo contendere to an indictment charging a felony, and who have not been adjudged non compos mentis. Persons not quilified under this section are subject to challenge for cause. (Emphasis ours.)

The 1971 General Assembly amended G.S. 9-3, *effective 21 July 1971,* so that the age requirement for voting was changed from twenty-one years or over to eighteen years or over. Therefore, we must determine whether there was intentional, arbitrary or systematic discrimination against this age group in the institution and management of the jury system. *State v. Wilson, supra.* At the time the jury list in question was prepared, the jury commissioners were precluded by the provisions of G.S. 9-3 from placing the names of any persons under twenty-one years of age on the jury list. G.S. 9-2 required that the jury commissioners "at least thirty days" prior to 1 January 1972 begin preparation of a new jury list for the ensuing biennium. Thus, if there be any discrimination against this age group, resulting in prejudice to these defendants, it must result

State v. Cornell

from a failure of the jury commission to place names representing such group on the jury list during the period from 21 July 1971 to 21 September 1971.

We know of no reasonable method by which the Forsyth County Jury Commission could have obtained a fair cross-section of the age group in question within a period of two months and one day. None of the names of this age group appeared on the voter registration records; very few of such names appeared on the tax lists; a large number of this group would have been in school, and many of them, being still dependent upon their parents, would not have established an independent address.

The North Carolina plan imposes a two-years lapse in preparation of new jury lists as opposed to the five-year plan adopted by some federal courts. *United States v. Kuhn*, 441 F. 2d 179 (5th Cir. 1971). We also note, parenthetically, that as of 4 February 1972 the United States Congress had not amended 28 U.S.C.A. § 1865 to require the federal district courts to include the names of persons under twenty-one years of age on their jury lists.

[15] The North Carolina statutory plan for the selection and drawing of jurors is constitutional and provides a jury system completely free of discrimination to any cognizable group.

The absence from the jury list of the names of persons between the ages of eighteen and twenty-one for the short period of time here complained of is not unreasonable, and does not constitute systematic and arbitrary exclusion of this age group from jury service.

The trial judge acted under a misapprehension of the law when he quashed the bills of indictment and ordered the jury commissioners of Forsyth County to prepare a new jury list for drawing of grand and petit jurors.

The order of 27 September 1971 entered by Judge Long in these cases is

Reversed.