STATE OF NORTH CAROLINA v. CHARLES ALVIN BROWER AND JAMES CANNON JOHNSON

No. 25

(Filed 14 May 1976)

1. **Constitutional Law § 29— motion to quash — systematic exclusion of Negroes — opportunity for investigation**

    Trial court's summary denial of defendant's motion to quash the petit jury array on the ground of systematic exclusion of Negroes therefrom did not deny defendants a reasonable time and opportunity to investigate and present evidence in support of their motion where counsel was appointed almost five months previously and defendants could have investigated all aspects of the alleged systematic racial exclusion during such time, defendants supported their motion only with inadequate affidavits, and the record contains nothing to suggest that defendants desired more time to procure additional evidence on the question.

2. **Constitutional Law § 29— systematic racial exclusion — blacks in county — black veniremen — insufficient showing**

    Defendants' showing by affidavit that 24 percent of the population of the county is black while only 13.56 percent of the veniremen called were black was insufficient to make out a *prima facie* case of systematic racial exclusion from the petit jury array which the State was required to rebut since there was no showing that the selection procedures in any manner provided a clear and easy oppor-

tunity for racial discrimination, and there was no showing that for a substantial period of time there has been only token representation of the Negro race upon the juries of the county.

3. **Criminal Law § 15; Jury § 2— change of venue — special venire — pretrial publicity**

In this prosecution for first degree murder, the trial court did not err in the denial of defendants' motion for a change of venue or, in the alternative, for a special venire from another county on the ground of unfavorable pretrial publicity where two newspaper articles attached to the motion were factual, not inflammatory, in nature, each juror questioned stated unequivocally that he had formed no preconceived notions of defendants' guilt or innocence and could render a verdict uninfluenced by anything he read in the newspaper, and the record does not disclose that defendants exhausted their peremptory challenges or that they accepted any juror objectionable to them.

4. **Criminal Law §§ 9, 112— failure to instruct on "mere presence"**

In this prosecution of two defendants for murder committed in the perpetration of armed robbery, the evidence did not require the trial court to instruct the jury on the insufficiency of "mere presence" at the scene of the crime to establish complicity in the commission of that crime where all the evidence, including the testimony of each defendant, tended to establish actual participation by each defendant in the robbery, and the gist of each defendant's testimony was that his participation in the robbery was coerced by the other.

5. **Criminal Law § 7— duress as defense to crime**

While it is generally held that duress is a defense to a killing done by another in the commission of a lesser felony participated in by the defendant under coercion, such duress must consist of threatening conduct which produces in the defendant (1) a reasonable fear of (2) immediate (or imminent) (3) death or serious bodily harm.

6. **Criminal Law § 7— duress — insufficiency of evidence to require instruction**

In this prosecution of two defendants for murder committed in the perpetration of an armed robbery, defendants' evidence did not require the court to instruct the jury on the defense of duress where the first defendant testified that he participated in the robbery only because the second defendant told him to do so and because he was "afraid," although he could not say what he was afraid of; the second defendant testified that he was unaware the first defendant was going to commit the robbery and that when the first defendant announced the holdup, he told the second defendant not to worry about it; and neither defendant offered any evidence that the other forced him to participate in the actual robbery or threatened him in any way.

7. **Criminal Law § 11— failure to instruct on accessory after the fact**

The trial court in a prosecution for murder committed in the perpetration of an armed robbery did not err in failing to charge on accessory after the fact where all the evidence tended to show actual participation by both defendants in the robbery.

**8. Criminal Law § 6; Homicide § 8— murder in perpetration of robbery — effect of drug intoxication**

In a prosecution for murder committed in the perpetration of robbery, defendant could not be guilty of murder in the first degree under the felony-murder rule if at the time the victim was killed defendant was so under the influence of drugs that he was utterly incapable of forming a specific intent to rob.

**9. Criminal Law § 6; Homicide § 8— drug intoxication — insufficiency of evidence to require instruction**

In a prosecution for murder committed in the perpetration of robbery, the trial court did not err in failing to instruct the jury as to defendant's purported inability to formulate a specific felonious intent due to drug intoxication where the only evidence concerning drugs was the testimony of a codefendant that he and defendant "had some drugs" on the day of the crime while driving to Montgomery County where the crime occurred, there was no evidence as to the nature and quantity of drugs ingested or their effect, if any, upon defendant at the time of the crime, and defendant testified unequivocally that neither defendant nor his codefendant had taken any drugs while driving to Montgomery County.

**10. Criminal Law § 92— consolidation of cases for trial**

Consolidation of cases for trial is generally proper when the offenses charged are of the same class and are so connected in time and place that evidence at trial upon one indictment would be competent and admissible on the other.

**11. Criminal Law § 92—consolidation of cases for trial — discretion of court**

Whether defendants who are jointly indicted should be tried jointly or separately is generally in the sound discretion of the trial court, and, in the absence of a showing that appellant has been deprived of a fair trial by consolidation, the exercise of the court's discretion will not be disturbed upon appeal.

**12. Criminal Law §§ 92, 95; Constitutional Law § 31— consolidation of cases — codefendant's use of out-of-court statement**

There is no merit in defendant's contention that the consolidation of his murder trial with that of a codefendant charged with the same crime deprived him of a fair trial by enabling the codefendant to use an out-of-court statement which inculpated defendant and exonerated the codefendant since the State did not offer the contents of the codefendant's statement, and each defendant testified in his own behalf and was subject to cross-examination by the other.

**13. Criminal Law § 91— continuance — discretion of court — motion based on constitutional right**

A motion for continuance is ordinarily addressed to the sound discretion of the trial court and its ruling thereon is not subject to review absent abuse of discretion; however, if the motion is based on a right guaranteed by the federal and state constitutions, the

State v. Brower

question presented is one of law and not of discretion and the ruling of the trial court is reviewable on appeal.

**14. Criminal Law § 91— motion for continuance — absence of witness**

In this prosecution for murder committed in the perpetration of a robbery, the trial judge did not abuse his discretion or deprive defendant of his constitutional right to confront his accusers with other testimony when he denied defendant's motion for continuance based upon the absence of a witness who would have testified that he and others had been requested by a codefendant to transport the codefendant from Randolph County to the victim's pawnshop in Montgomery County, although the testimony would have tended, weakly at best, to corroborate defendant's testimony of his intent when he left Randolph County, since defendant's intent when he entered the victim's pawnshop, not when he left Randolph County, was the crucial point.

**15. Criminal Law § 114— evidence not summarized as established fact**

The trial court in a murder prosecution did not summarize a portion of a witness's testimony as established fact and thereby express an opinion in violation of G.S. 1-180.

**16. Criminal Law § 71— intent to assist codefendant — shorthand statement of fact**

In this prosecution for murder committed in the perpetration of armed robbery, testimony that after the shorter of the two robbers forced two persons to lie on the floor, the shorter man went over with the taller man "to assist him" was competent as a shorthand statement of fact since the witness was not expressing an opinion as to the shorter defendant's intent but was simply narrating a sequence of events during the commission of the crime.

**17. Criminal Law § 77— exclusion of self-serving declaration**

In a murder prosecution wherein a witness testified that he did not attempt to question defendant at 3 o'clock "because of his condition," the court properly sustained the State's objection to a question as to whether defendant complained about his condition since the question sought to elicit a self-serving declaration at a time when defendant had not been upon the witness stand.

**18. Criminal Law § 63— mental capacity — lay witness**

Even a lay witness who has observed another, or conversed with him, or had dealings with him, and who has had a reasonable opportunity based thereon to form an opinion satisfactory to himself as to the mental condition of such person, may give his opinion in evidence upon the issue of mental capacity.

**19. Criminal Law § 63— defendant's appearance — exclusion of testimony**

The trial court did not err in the exclusion of testimony as to whether defendant appeared to be normal when the witness saw defendant in Southern Pines since the witness was not asked to state his opinion as to defendant's mental condition and there was no showing that the witness had a reasonable opportunity to observe defendant and be able to form such an opinion.

State v. Brower

**20. Criminal Law §§ 43, 95— admission of photograph — failure to give limiting instructions — absence of request**

The trial court did not err in failing to instruct the jury that a photograph was admitted only for illustrative purposes in the absence of a request for limiting instructions.

**21. Criminal Law §§ 86, 95— prior convictions — failure to give limiting instructions — absence of request**

In absence of a timely request, the trial court did not err in failing to instruct the jury that evidence of defendant's prior convictions was admitted only for purposes of impeachment.

**22. Constitutional Law § 33; Criminal Law § 48— right to remain silent — failure to contradict codefendant's statement**

While the record contains several references to the fact that defendant made no in-custody statement, there is no basis for defendant's argument that the State prejudicially compromised his right to remain silent by inferring culpability from his failure to make a statement contradicting his codefendant's statement which tended to incriminate defendant.

**23. Criminal Law § 73— testimony by one defendant — identification of gun — hearsay**

In a prosecution for murder committed in the perpetration of a robbery, testimony by one defendant that prior to the crime the owner of a pistol brought it into a room where defendants were engaged in a conversation and stated that he had bought the pistol from the victim, and that this same pistol was the one used by the second defendant during the robbery was competent to identify the perpetrators of the crime, as well as to show a design or plan, and did not constitute inadmissible hearsay.

**24. Criminal Law § 86— familiarity of defendant with robbery — no necessity for limiting instructions**

The trial court did not err in failing to give the jury limiting instructions regarding evidence of prior criminal convictions when defendant answered negatively a question not objected to as to whether he was familiar with robbery.

**25. Criminal Law § 66— lineup — in-court identification**

The trial court did not err in permitting a murder victim's wife to make an in-court identification of defendant where the court made findings supported by the evidence on *voir dire* that a pretrial lineup procedure was not impermissibly suggestive and that the witness's in-court identification of defendant was of independent origin and based on her observations of defendant during commission of the crime.

**26. Homicide § 31— judgments — erroneous recitation of verdict — remand for correction**

Where judgment in a first degree murder case erroneously recites that the jury returned for their verdict that defendant "shall suffer the penalty of death by asphyxiation," the case is remanded so that the judgment may be corrected to show the verdict of guilty

of murder in the first degree rendered by the jury and the death sentence imposed by the court.

DEFENDANTS appeal from judgments of *Tillery, J.,* 21 July 1975 Session, MONTGOMERY Superior Court.

In separate bills of indictment, drawn in conformity with G.S. 15-144, each defendant is charged with the murder of John Farley Hall on 19 February 1975 in Montgomery County.

The State's evidence tends to show that on and prior to 19 February 1975 John Farley Hall and his wife operated a pawnshop in their home in Mount Gilead, Montgomery County. About 10 a.m. the two defendants arrived in a dirty white and blue Chevrolet. They entered the building and, while Mr. Hall was showing them a television set, defendant Johnson pulled a pistol from his belt and said, "This is a holdup." Defendant Brower grabbed a rifle that was leaning against the wall of the living room and directed Mrs. Hall and Mr. Burris, a neighbor who was present, to go into the dining room and lie on the floor. They did so. Meanwhile, Mr. Hall was resisting and defendant Johnson warned Mr. Hall several times to cease his resistance or he would be killed. Mr. Hall continued to resist and Johnson killed him with three shots from the pistol. Both men then left in Johnson's car.

Roger Jarrell, a Pepsi-Cola driver, arrived on the scene shortly before defendants left the building. One of them pointed a .22 automatic rifle at him, and he asked them not to shoot him. The other defendant was putting a pistol in his belt as he came out of the door. When they got into the old white car with a blue top, Mr. Jarrell noted the license number was CWT-171. When the car left he entered the building and found Mr. Hall, his face covered with blood, lying on the floor. He was dead. Mr. Jarrell then called the police, described the car and the individuals in it, and furnished the license number.

Later the same day when defendants were apprehended in Moore County, their car was searched by the police who found six handguns and a leather pouch containing $8.80 in change and some .22 ammunition, all of which items were identified as having come from the Hall residence. Defendant Brower had $128 in one of his socks.

At the trial Mrs. Hall positively identified defendant Johnson as the man with the pistol who shot and killed her husband.

She also positively identified defendant Brower as the man who picked up the rifle and forced her and Mr. Burris to lie on the floor. She said she recognized Brower as the man who had pawned a tape player for $15 just two days prior to the killing.

Defendant Brower, twenty-four years of age, testified as a witness in his own behalf. He said he put five dollars' worth of gasoline in defendant Johnson's car and Johnson agreed to take him from Asheboro, where they both lived, down into Montgomery County to get some clothes. On the way down they "had some drugs." They ultimately arrived at the residence of Sam Stanback "where my clothes were," and while there they drank beer and observed a pistol Stanback said he bought from Mr. Hall. Stanback and defendant Johnson then went into the kitchen and talked privately. When they returned Johnson said, "Ride on up the road with me here," and when they got in the car Johnson said, "I'm going up here to this place where you pawned your tape player, . . . I just want to see what type place it is." When they arrived Mr. Hall invited them in. After some conversation defendant Johnson pulled a gun, started waving it and said, "This is a stickup." Johnson instructed him to get the rifle and bring the other people into the room, and he obeyed. Johnson told him to see if Mr. Burris had a pocketbook, "and I got his wallet and stuck it up in my shirt. I was getting ready to turn back around, I had the rifle in my hand, and that's when I heard the shots." Defendant Brower testified that the pistol was the same one Johnson got from Sam Stanback. He said he gave the Burris pocketbook to Johnson while they were going down the road in the car following the killing and that Johnson later gave him a roll of money while they were in a restaurant "and told me to put it in my sock." He admitted on cross-examination that he had pawned a tape player with Mr. Hall for $15 on 17 February 1975, two days before the robbery and killing. He denied that he went to Mr. Hall's place of business to rob him and insisted he did not know Johnson intended to rob him. He stated that he had been taking drugs which affected him to some extent, "but I wasn't high to the extent that I didn't know what was going on."

Defendant Johnson, thirty-four years old, testified as a witness in his own behalf. He said he lived in Asheboro and had seen defendant Brower around town for about two months. A mutual friend asked him to take Brower to a pawnshop in Biscoe where Brower said he wanted to redeem his father's

pistol. He agreed to do so, and they left together on the morning of 19 February 1975 after Brower put five dollars' worth of gas in the car. They drove to Mount Gilead but Johnson said he was under the impression they were in Biscoe. Upon arriving at Mr. Hall's house, Brower asked about a television and also about a tape player. While they were waiting for the television to warm up, Brower said, "This is a robbery," whereupon Johnson said, "Man, what in the hell are you doing?" Brower replied, "Don't worry about it." Johnson testified he then grabbed the rifle and told Mrs. Hall and Mr. Burris to lie on the floor. Johnson testified he then turned and ran out the door with the rifle in his hand. He was followed by Brower, who was carrying a brown paper bag. Johnson said that he threw the rifle out of the car three or four blocks down the street and told Brower to get out. Instead, Brower pulled "that silver pistol" out of the bag and told him to drive. Two or three miles later Brower said he wanted to stop and get something to eat, so they stopped, walked over to the Kentucky Fried Chicken place, went inside and ordered. "I went to the rest room, and when I came out I walked over going to the gas station to call the police. Before I could get to the telephone, an officer came and arrested me."

Both defendants were convicted of murder in the first degree and sentenced to death. Their appeal assigns errors discussed in the opinion.

*Charles H. Dorsett, attorney for defendant appellant Brower.*

*Carl W. Atkinson, Jr., attorney for defendant appellant Johnson.*

*Rufus L. Edmisten, Attorney General, and James E. Magner, Jr., Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

Defendants move to quash the petit jury array on the ground that potential Negro jurors were systematically excluded solely on the basis of race. In support of their motion to quash defendants submitted identical affidavits alleging that 24 percent of the population of Montgomery County is black (1970 Census of Population, "General Population Characteristics of North Carolina," Table 34, page 125, marked Defendants' Exhibit A), while only 8 (or 13.56 percent) of the 59 veniremen

drawn and available to serve were black. The trial court denied the motion on the ground that the supporting affidavits were insufficient to establish a basis for quashal. Defendants argue that the court erred in summarily denying their motion to quash without giving them an opportunity to offer further evidence and without requiring the State to show affirmatively an absence of systematic exclusion. This is the first assignment discussed in defendants' briefs.

[1] Defendants correctly assert that when the array is challenged on the ground of systematic racial exclusion the challenger is entitled to reasonable time and opportunity to investigate and present evidence. *See State v. Perry*, 248 N.C. 334, 103 S.E. 2d 404 (1958). Even so, there is no evidence in this record that defendants were not accorded that right. Counsel was appointed on 28 February 1975. Almost five months had elapsed during which defendants could have investigated all aspects of the alleged systematic exclusion of Negroes from the jury box of Montgomery County. Yet they supported their motion only with inadequate affidavits, and the record contains nothing to suggest that defendants desired more time to procure additional evidence on the question. We perceive no error incident to undue haste in passing upon the challenge to the array.

Defendants' argument presupposes that the affidavits were sufficient to make out a prima facie case of systematic racial exclusion which the State was required to rebut. We now examine the disputed validity of that supposition.

The following established legal principles have long been approved by both state and federal courts:

1. If the conviction of a Negro is based on an indictment of a grand jury or the verdict of a petit jury from which Negroes were excluded by reason of their race, the convicton cannot stand.

2. If the motion to quash alleges racial discrimination in the composition of the jury, the burden is upon the defendant to establish it. But once he establishes a prima facie case of racial discrimination, the burden of going forward with rebuttal evidence is upon the State.

3. A defendant is not entitled to demand a proportionate number of his race on the jury which tries him nor on the venire from which petit jurors are drawn.

4. A defendant must be allowed a reasonable time and opportunity to inquire into and present evidence regarding the alleged intentional exclusion of Negroes because of their race from serving on the grand or petit jury in his case. Whether he was afforded a reasonable time and opportunity must be determined from the facts in each particular case.

5. The mere denial by officials charged with the duty of listing and summoning jurors that there was no intentional, arbitrary or systematic discrimination on the ground of race is insufficient to overcome a prima facie case.

6. A jury list is not discriminatory because it is drawn from the tax list of the county. Nor is a jury commission limited to sources specifically designated by the statute.

7. An accused has no right to be indicted or tried by a jury of his own race or even to have a representative of his race on the jury. He does have the constitutional right to be tried by a jury from which members of his own race have not been systematically and arbitrarily excluded.

[2] Decisions, both state and federal, supporting these principles are cited and discussed in *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765 (1970), and *State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768 (1972). In the case before us defendants contend that their showing by affidavits that 24 percent of the population of Montgomery County is black while only 13.56 percent of the veniremen called were black makes out a prima facie case of systematic racial exclusion. Not so.

The courts have never announced precise mathematical standards for demonstrating systematic racial exclusion. Rather, they emphasize a case-by-case factual analysis. Even when there is "striking" statistical evidence of disparity between the ratio of the races in population and jury service, or of the progressive elimination of potential Negro jurors through the selection process, the courts have considered such evidence, *standing alone,* insufficient to constitute a prima facie case of systematic discrimination. *See Alexander v. Louisiana,* 405 U.S. 625, 31 L.Ed. 2d 536, 92 S.Ct. 1221 (1972) ; *Swain v. Alabama,* 380 U.S. 202, 13 L.Ed. 2d 759, 85 S.Ct. 824 (1965). *Accord, State v. Cornell, supra.* To establish a prima facie case, defendants are generally required to produce not only statistical evidence establishing that blacks were underrepresented on the jury but also evidence that the selection procedure itself was not racially neutral, or

that for a substantial period in the past relatively few Negroes have served on the juries of the county notwithstanding a substantial Negro population therein, or both. *See Alexander v. Louisiana, supra; Whitus v. Georgia,* 385 U.S. 545, 17 L.Ed. 2d 599, 87 S.Ct. 643 (1967); *Arnold v. North Carolina,* 376 U.S. 773, 12 L.Ed. 2d 77, 84 S.Ct. 1032 (1964); *Eubanks v. Louisiana,* 356 U.S. 584, 2 L.Ed. 2d 991, 78 S.Ct. 970 (1958); *Norris v. Alabama,* 294 U.S. 587, 79 L.Ed. 1074, 55 S.Ct. 579 (1935); *State v. Cornell, supra; State v. Ray,* 274 N.C. 556, 164 S.E. 2d 457 (1968); *State v. Wright,* 274 N.C. 380, 163 S.E. 2d 897 (1968); *State v. Yoes* and *Hale v. State,* 271 N.C. 616, 157 S.E. 2d 386 (1967); *State v. Lowry* and *State v. Mallory,* 263 N.C. 536, 139 S.E. 2d 870, *appeal dismissed and cert. denied,* 382 U.S. 22, 15 L.Ed. 2d 16, 86 S.Ct. 227 (1965); *State v. Wilson,* 262 N.C. 419, 137 S.E. 2d 109 (1964).

Defendants' evidence in this case establishes at most that blacks were approximately 11 percent underrepresented on the venire from which the petit jury was drawn. There is no evidence as to what portion of the 24 percent black population of Montgomery County was actually eligible for jury service. There is no evidence disclosing the sources from which the names of the veniremen were chosen and no evidence that such sources identified prospective jurors by race. In short, there is no evidence that the selection procedures in any manner "provided a clear and easy opportunity for racial discrimination." *Alexander v. Louisiana, supra.* There is no evidence disclosing the number of Negroes serving on juries in Montgomery County prior to the selection of the venire in question and no evidence of repeated substantial discrepancies between the number of Negroes drawn for jury duty and the number to be anticipated in view of the racial ratio in the source materials. In short, there is no evidence to support a finding that for a substantial period of time there has been only token representation of the Negro race upon the juries of Montgomery County. In the absence of such evidence, "[w]e cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10 percent." *Swain v. Alabama, supra. Accord, State v. Cornell, supra.*

Defendants have failed to carry the burden of establishing a prima facie case of intentional racial discrimination in the composition of the jury. Hence the State had nothing to rebut,

State v. Brower

and the trial judge correctly denied the motion challenging the array. This assignment is overruled.

[3] The next assignment of error discussed in defendants' briefs is addressed to denial of their motion for a change of venue or, in the alternative, for a special venire from another county. G.S. 1-84; G.S. 9-12.

Motions for change of venue or special venire are addressed to the sound discretion of the trial judge and, absent abuse of discretion, his rulings will not be disturbed on appeal. *State v. Thompson,* 287 N.C. 303, 214 S.E. 2d 742 (1975); *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971).

In support of their motion defendants attached two newspaper articles appearing in the *Montgomery Herald* on 20 February 1975, one day after the commission of the crime, and on 17 July 1975, less than one week before the term of court at which defendants were tried. These newspaper accounts are factual—not inflammatory—in nature and appear to be well within the bounds of propriety. *See State v. Harrill,* 289 N.C. 186, 221 S.E. 2d 325 (1976); *State v. Thompson, supra; State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974); *State v. Mitchell,* 283 N.C. 462, 196 S.E. 2d 736 (1973). Moreover, although several of the jurors stated they had read Exhibits A and B, every juror questioned stated unequivocally that he had formed no preconceived notions of defendants' guilt or innocence and could render a verdict uninfluenced by anything he read in the newspaper. Furthermore, the record does not disclose that defendants exhausted their peremptory challenges or that they accepted any juror objectionable to them. Thus, neither abuse of discretion nor prejudice has been shown. *State v. Thompson, supra.* This assignment is without merit and is overruled.

We now turn to the question whether the trial judge erred by (1) failing to instruct the jury on the distinction between aiding and abetting and "mere presence" and (2) denying defendant Johnson's motion to instruct the jury on the crime of accessory after the fact. In their briefs, defendants combine the assignments presenting these questions, and we consider them in like manner here.

[4] There is nothing in the record to indicate that either defendant requested an instruction on the insufficiency of "mere presence" at the scene of a crime to establish complicity in the

commission of that crime. We need not decide whether the trial judge in this case was obligated by G.S. 1-180 to so instruct without a request therefor. We hold on the facts of this case that such an instruction was properly omitted. Here, defendants were prosecuted on the theory that they had acted in concert to commit a robbery which culminated in the shooting death of Mr. Hall and thus were guilty of first degree murder under the felony-murder provisions of G.S. 14-17. *See State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. Wright,* 282 N.C. 364, 192 S.E. 2d 818 (1972); *State v. Hairston* and *State v. Howard* and *State v. McIntyre,* 280 N.C. 220, 185 S.E. 2d 633 (1971); *State v. Rich,* 277 N.C. 333, 177 S.E. 2d 422 (1970); *State v. Haynes,* 276 N.C. 150, 171 S.E. 2d 435 (1970).

The State's evidence tends to show that defendants entered Mr. Hall's pawnshop together, Johnson brandished a pistol and announced a holdup, Brower picked up an unloaded rifle and ordered Mrs. Hall and Mr. Burris to lie on the floor while he robbed Mr. Burris of his wallet, and Johnson shot and killed Mr. Hall when he continued to resist. Defendants then fled in Johnson's car with a sack of pistols and a sum of money taken in the holdup. When defendants were apprehended two hours later, six handguns and a leather pouch were found in the car and Brower had $128 in cash hidden in his sock. This evidence fully supports the State's theory of the case.

Evidence for Bower tended to show that he accompanied Johnson to the pawnshop not knowing that Johnson intended to rob anyone. He said he participated in the robbery only because Johnson told him to do so and because he was "afraid," although he could not say what he was "afraid of."

Johnson's evidence was to the effect that he entered the pawnshop unaware that Brower intended to rob or kill anyone. Johnson grabbed the rifle "to protect himself" and forced Mr. Burris and Mrs. Hall to the floor to prevent Mr. Burris from getting violent with defendant Brower. Johnson said that he started toward the door, heard a shot, and ran to his car. Brower followed him, pulled a pistol from a bag, and told him to drive.

All of the evidence, including the testimony of each defendant, tends to establish actual participation by each defendant in the robbery. The evidence shows considerably more than "mere presence" during the robbery and murder of Mr. Hall, and a charge on "mere presence" was not required. G.S. 1-180 requires

only that the trial judge declare and explain the law "arising on the evidence" with respect to all substantial features of the case. *State v. Dooley,* 285 N.C. 158, 203 S.E. 2d 815 (1974); *State v. Everette,* 284 N.C. 81, 199 S.E. 2d 462 (1973); *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971). This requirement was satisfied in the case at bar.

[5, 6] Apparently the gist of each defendant's testimony is that his participation in the underlying felony was coerced by the other. While we find no decision of this Court directly on point, the majority rule elsewhere is that duress is a defense to a killing done by another in the commission of a lesser felony participated in by the defendant under coercion. "It is generally held . . . that duress must consist of threatening conduct which produces in the defendant (1) a reasonable fear of (2) immediate (or imminent) (3) death or serious bodily harm." LaFave and Scott, *Handbook on Criminal Law,* § 64, p. 377 (1972), and cases cited therein. Defendant Brower stated that he didn't know what he was "afraid of," and defendant Johnson testified that when Brower announced the holdup, he told Johnson not to worry about it. Neither defendant offered any evidence that the other forced him to participate in the actual robbery or threatened him in any way. Such evidence falls woefully short of the preceding standard and is insufficient to require an instruction on the defense of duress. That the jury disbelieved both defendants is quite understandable.

[7] There is no merit in the contention that the judge should have charged on the crime of accessory after the fact. "A participant in a felony may no more be an accessory after the fact than one who commits larceny may be guilty of receiving the goods which he himself had stolen. . . . How may an accessory after the fact render assistance to the principal felon if he himself is the principal felon?" *State v. McIntosh,* 260 N.C. 749, 133 S.E. 2d 652 (1963), *cert. denied,* 377 U.S. 939, 12 L.Ed. 2d 302, 84 S.Ct. 1345 (1964).

The assignments of error encompassing the foregoing contentions are overruled.

Failure of the trial judge to instruct the jury relative to defendant Johnson's suggested inability to formulate a specific felonious intent due to drug intoxication constitutes Johnson's eleventh assignment of error. We examine the question briefly.

State v. Brower

[8] Where a specific intent is an essential element of the offense charged, as here, intoxication may negate the existence of that intent. If at the time Mr. Hall was killed defendant Johnson was so under the influence of drugs that he was utterly incapable of forming a specific intent to rob, he could not be guilty of murder in the first degree under the felony murder rule. *State v. Propst*, 274 N.C. 62, 161 S.E. 2d 560 (1968). This is so because an essential element of the underlying felony of robbery would be lacking, and the murder would not have been committed in the perpetration of the specified felony. *State v. Simmons, supra.*

[9] In this case the only evidence concerning drugs was the testimony of defendant Brower that he and Johnson "had some drugs" while driving to Montgomery County on the day of the crime, but that he, Brower, "wasn't high to the extent that I didn't know what was going on." There is no evidence from any source as to the nature and quantity of drugs ingested or their effect, if any, upon defendant Johnson at the time the crime was committed. *See State v. Simmons, supra; State v. Fowler*, 285 N.C. 90, 203 S.E. 2d 803, *cert. granted*, 419 U.S. 963, 42 L.Ed. 2d 177, 95 S.Ct. 223 (1974); *State v. Crews*, 284 N.C. 427, 201 S.E. 2d 840 (1974); *State v. Hamby* and *State v. Chandler*, 276 N.C. 674, 174 S.E. 2d 385 (1970), *death sentence vacated*, 408 U.S. 937, 33 L.Ed. 2d 754, 92 S.Ct. 2862 (1972). *Compare State v. Propst, supra.* In fact, when questioned whether *either* defendant had taken any drugs while en route to Montgomery County, defendant Johnson replied *unequivocally* that they had *not.* Upon such evidence an instruction on behalf of defendant Johnson on the law with respect to drug intoxication was not required. This assignment is overruled.

We next consider whether the trial court erred in consolidating the trials of Brower and Johnson and denying their motions for a severance. This question is preserved and argued only by Brower and is the basis for his ninth and fifteenth assignments of error.

[10, 11] Consolidation of cases for trial is generally proper when the offenses charged are of the same class and are so connected in time and place that evidence at trial upon one indictment would be competent and admissible on the other. *State v. Taylor*, 289 N.C. 223, 221 S.E. 2d 359 (1976); *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972). As a general rule, whether defendants who are jointly indicted should be

tried jointly or separately is in the sound discretion of the trial court, and, in the absence of a showing that appellant has been deprived of a fair trial by consolidation, the exercise of the court's discretion will not be disturbed upon appeal. *State v. Taylor, supra; State v. Jones,* 280 N.C. 322, 185 S.E. 2d 858 (1972).

[12] Defendant Brower argues that the order of consolidation deprived him of a fair trial because it enabled his codefendant Johnson to use an otherwise inadmissible out-of-court statement (which exonerated Johnson and inculpated Brower) to suggest Brower's guilt. Nothing in the record supports this argument. The State did not offer the contents of defendant Johnson's extrajudicial statement. Moreover, each defendant elected to testify in his own behalf and was subject to cross-examination by the other. *See State v. Wright,* 282 N.C. 364, 192 S.E. 2d 818 (1972). *Compare Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968); *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492 (1968). Defendant Brower has shown neither abuse of discretion nor prejudice to his defense as a result of the consolidation. These assignments are therefore overruled.

Defendant Johnson assigns as error the denial of his motion for a continuance based upon the absence of the witness Pee Wee Johnson. He contends he was thus denied his constitutional right to confront his accusers with other testimony in violation of the Sixth and Fourteenth Amendments to the Federal Constitution and Article I, sections 19 and 23 of the State Constitution.

The record reflects that a subpoena for Pee Wee Johnson had been issued on 8 July 1975 and personally served on the witness on 14 July 1975; that apparently said witness was present in the courtroom prior to arraignment of defendants, and when his absence was discovered after arraignment, a second subpoena was issued on 22 July 1975 but never served since the witness could not be located. Defense counsel informed the court of Pee Wee Johnson's name and stated that his testimony would establish that prior to the date of Mr. Hall's murder defendant Brower requested Pee Wee Johnson and others in Randolph County to transport Brower to Mr. Hall's place of business in Montgomery County. Denial of Johnson's motion for a continuance due to the absence of Pee Wee Johnson constitutes defendant Johnson's eighteenth assignment of error.

[13]   It is settled law that a motion for continuance is ordinarily addressed to the sound discretion of the trial court and its ruling is not subject to review absent abuse of discretion. *State v. Smathers,* 287 N.C. 226, 214 S.E. 2d 112 (1975) ; *State v. Robinson,* 283 N.C. 71, 194 S.E. 2d 811 (1973) ; *State v. Stinson,* 267 N.C. 661, 148 S.E. 2d 593 (1966). However, if the motion is based on a right guaranteed by the federal and state constitutions, the question presented is one of law and not of discretion and the ruling of the trial court is reviewable on appeal. *State v. Harrill, supra; State v. Smathers, supra; State v. Rigsbee,* 285 N.C. 708, 208 S.E. 2d 656 (1974). The question presented here is one of law rather than discretion, for "[t]he right to . . . face one's accusers and witnesses with other testimony [is] guaranteed by the Sixth Amendment to the Federal Constitution which is made applicable to the states by the Fourteenth Amendment, and by Article I, sections 19 and 23 of the Constitution of North Carolina." *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296 (1972).

[14]   Defendant Johnson contends he was prejudiced because the testimony of his absent witness would have established Johnson's nonfelonious intentions in agreeing to drive Brower to Mr. Hall's place of business. We find this argument unpersuasive. Assuming Pee Wee Johnson would have testified that he and others had been requested by Brower to transport him from Randolph County to Mr. Hall's place of business in Montgomery County, such testimony would have tended, weakly at best, to corroborate defendant Johnson's testimony regarding the circumstances which took him to Mr. Hall's place of business on the day of the crime. Such evidence, had it been offered at the trial, would have had little, if any, probative value with respect to defendant's intentions immediately prior to and during the commission of the robbery. Indeed, the intent with which defendant Johnson left Randolph County has little weight when the totality of the evidence is considered. *His intent when he entered Mr. Hall's pawnshop is the crucial point.* We hold that denial of Johnson's motion for a continuance did not constitute an abuse of discretion and did not deprive said defendant of his constitutional right to confront his accusers with other testimony. *Cf. State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970) ; *State v. Patton,* 260 N.C. 359, 132 S.E. 2d 891 (1963), *cert. denied,* 376 U.S. 956, 11 L.Ed. 2d 974, 84 S.Ct. 977 (1964). In our view, Pee Wee Johnson's testimony, had it been

available and admitted, would not have affected the result. This assignment is overruled.

Defendant Brower contends the trial court erred in admitting certain evidence and in failing to instruct the jury with respect to various portions of it. In his brief, Brower discusses his third, fourth, seventh, twenty-fourth, twenty-seventh, twenty-eighth, thirtieth, thirty-first, thirty-second and thirty-third assignments of error as subsections of one assignment. We shall endeavor to deal with them in like fashion, although the disorganized format has made our task more difficult.

[15] Brower first argues that the trial court summarized a portion of Mrs. Hall's testimony as established fact, thereby expressing an opinion in violation of G.S. 1-180. This argument has no merit. Defendant did not object or otherwise call to the court's attention the error allegedly committed in summarizing the State's evidence. "Any error or omission in the statement of the evidence must be called to the attention of the court at the trial to avail the defendant any relief on his appeal." *State v. Thompson*, 226 N.C. 651, 39 S.E. 2d 823 (1946). *See State v. McClain*, 282 N.C. 396, 193 S.E. 2d 113 (1972). However, be that as it may, during his final mandate to the jury the trial judge emphasized that he had no opinion and intended to express no opinion by anything he had said or done in the course of the trial. Under these circumstances the jury obviously understood that the court was merely reviewing what the State's evidence tended to show, rather than expressing opinions that certain facts had been established. *State v. Mitchell*, 260 N.C. 235, 132 S.E. 2d 481 (1963), relied on by defendant, is factually distinguishable. Viewing the charge as a whole, it contains no expression of opinion in violation of G.S. 1-180. *See State v. Poole*, 289 N.C. 47, 220 S.E. 2d 320 (1975).

[16] Defendant Brower next argues under this assignment that the trial court erred in allowing the State's witness Wade Burris to testify over objection that after the shorter of the two robbers, identified as Brower, forced Mr. Burris and Mrs. Hall to lie on the floor and after he took Mr. Burris's pocketbook, the shorter man "went over with the taller man [identified as defendant Johnson] *to assist him.*" (Emphasis added.) Defendant contends the witness was thus erroneously permitted to draw inferences concerning defendant's intention. We find no merit in this argument. It is true that ordinarily a witness may not give his opinion of another person's intention. 1 Stansbury,

North Carolina Evidence § 129 (Brandis rev. 1973), and cases cited therein. Nevertheless, the witness Burris was not expressing his opinion that Brower intended to assist defendant Johnson. Rather, the statement was simply a narration of the sequence of events during the commission of the crime. It was a shorthand statement of fact. *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968) ; 1 Stansbury, North Carolina Evidence §§ 124, 125, 129 (Brandis rev. 1973). Moreover, almost identical testimony had been given previously by the witness Burris without objection. Defendant's subsequent objection to evidence of the same or similar import is of no avail. *State v. Sanders,* 288 N.C. 285, 218 S.E. 2d 352 (1975) ; *State v. Stegmann,* 286 N.C. 638, 213 S.E. 2d 262 (1975) ; *State v. Van Landingham,* 283 N.C. 589, 197 S.E. 2d 539 (1973). This assignment is overruled.

Defendant Brower's third argument encompassed by this assignment fails to relate his discussion to any specific exception in the record. *See* Rule 10, Rules of Appellate Procedure, 287 N.C. 670, 698 (Appendix 1975). Reference is made to the testimony of two unnamed witnesses regarding Brower's mental capacity. Defendant contends that one of the witnesses was not allowed to testify regarding Brower's complaints of headaches, but the only testimony in the record on that subject was given by defendant Johnson who quoted Brower as stating a couple of times that "he had a headache" but did not wish to stop for a drink or any medication to alleviate it.

[17] By a voyage of discovery through the record, we learn that Brower's Exception No. 28 is addressed to a statement of the witness Brady that he did not attempt to question Brower at 3 o'clock "because of his condition." When asked whether Brower complained about his condition, the court sustained the State's objection. The question sought to elicit a self-serving declaration at a time when Brower had not been upon the witness stand. As such, it was properly excluded. 1 Stansbury, North Carolina Evidence § 140 (Brandis rev. 1973), and cases cited therein. Furthermore, the record reflects that defendant obtained the benefit sought by the testimony of the witness Brady before and after the exclusion in question. In any event, the answer which the witness Brady would have given had he been permitted to do so was not placed in the record. Therefore we cannot know whether the ruling by the trial court was prejudicial. *State v. Robinson,* 280 N.C. 718, 187 S.E. 2d 20 (1972).

Continuing our voyage through the record, we find that Brower's Exception No. 29 occurred during the redirect examination of the witness Brady. He was asked: "Do you know whether either of these defendants took any medication at any time prior to the time you saw them for the previous hour or two?" Objection overruled. Answer: "I do not know, no sir." It is most apparent that the answer—"I don't know"—was in no way prejudicial.

Brower's Exception No. 31 was taken during defense counsel's cross-examination of State's witness Charles Watkins, a private investigator employed by the Moore County Sheriff's Department. The witness was asked: "When you saw him at Southern Pines, Mr. Watkins, did you notice anything in particular about him, was there anything unusual about him?" Answer: "I don't recall anything unusual." Question: "Did he appear to be normal to you?" Objection sustained. Exception No. 31. Defendant Brower argues that exclusion of the answer to the last question was error.

[18, 19] Even a lay witness who has observed another, or conversed with him, or had dealings with him, and who has had a reasonable opportunity based thereon to form an opinion satisfactory to himself as to the mental condition of such person, may give his opinion in evidence upon the issue of mental capacity. *Moore v. Insurance Co.*, 266 N.C. 440, 146 S.E. 2d 492 (1966); 1 Stansbury, North Carolina Evidence § 127 (Brandis rev. 1973). Here, however, the witness was not asked to state his opinion as to defendant's mental condition. There is no showing that the witness had a reasonable opportunity to observe defendant and be able to form such an opinion. Mr. Brady had already stated he did not recall anything unusual. Moreover, the record is silent as to what the witness would have testified had he been allowed to answer. The ruling therefore may not be relied upon as prejudicial error. *State v. Robinson, supra.*

We find no merit in the twenty-eighth, twenty-ninth and thirty-first exceptions, and any assignments of error based thereon are overruled.

[20] Defendant Brower next contends under this assignment that the trial court erred in admitting two photographs, State's Exhibits 2 and 3, without limiting instructions to the jury. The record reveals, however, that the court did in fact properly instruct the jury that State's Exhibit 3 should be considered for

illustrative purposes only. *See* 1 Stansbury, North Carolina Evidence § 34 (Brandis rev. 1973). Apparently State's Exhibit 2 was admitted into evidence without such limiting instruction. Even so, no such instruction was requested and, in the absence of such request, failure to give a limiting instruction is not error. *State v. Williams,* 272 N.C. 273, 158 S.E. 2d 85 (1967); *State v. McKissick,* 271 N.C. 500, 157 S.E. 2d 112 (1967); *State v. Cade,* 215 N.C. 393, 2 S.E. 2d 7 (1939). It follows that no prejudicial error has been shown.

[21]  Defendant Brower next argues under this assignment that the trial court erred in failing to instruct the jury that evidence of his prior convictions pertained only to his credibility, not to his guilt or innocence. In his brief, defendant fails to relate this argument to any specific exception in the record as required by Rule 10, Rules of Appellate Procedure, supra. In any event, the law is well settled that when a defendant in a criminal case elects to testify, he is subject to cross-examination for purposes of impeachment concerning his prior criminal conduct. *See State v. Foster,* 284 N.C. 259, 200 S.E. 2d 782 (1973); *State v. Williams, supra.* Although the court apparently failed to instruct the jury that evidence of prior convictions was admitted only for purposes of impeachment, the record contains no indication that any such limiting instruction was requested. Absent a timely request, failure to give the appropriate limiting instruction is not error. *State v. Williams, supra; State v. Cade, supra.* Even so, we note that the court in its final charge to the jury did, in fact, correctly limit the restricted purpose for which this evidence was admitted. In no view of the matter, therefore, has error been shown.

[22]  Defendant Brower next argues under this assignment that the trial court erred in permitting the State over objection to question him concerning codefendant Johnson's out-of-court statement so as to suggest that Brower's silence was somehow incriminating. We find nothing in the record to support this contention. The record shows that defendant Brower was interrogated by *counsel for defendant Johnson* as follows:

"Q. What made you decide to make a statement, then, Mr. Brower?

OBJECTION OVERRULED.

Q. Did you know Mr. Johnson had made a statement, Mr. Brower?

A. I didn't know for sure.

EXCEPTION NO. 43"

The record contains several references to the fact that defendant Brower had not made a statement, and these had been admitted previously without objection. One such reference appears in Brower's own testimony on direct examination. We perceive no basis for Brower's apparent argument that the State prejudicially compromised his right to remain silent by inferring culpability from his failure to make a statement contradicting his codefendant Johnson's statement which tended to incriminate Brower. *State v. Castor,* 285 N.C. 286, 204 S.E. 2d 848 (1974), and *State v. Virgil,* 263 N.C. 73, 138 S.E. 2d 777 (1964), cited by defendant Brower in support of his contention, are factually distinguishable. We find no merit in this argument.

Defendant Johnson, following the same general format of Brower's brief, combines into one assignment his seventh, twenty-second, twenty-third, thirty-first, thirty-fifth, thirty-seventh, thirty-ninth and fortieth assignments of error and then attempts to discuss them under five subsections. His first two contentions generally track the points raised and the arguments made in Brower's brief. They have been considered and further discussion of them is unnecessary.

[23] Defendant Johnson's third argument under this assignment relates to those portions of defendant Brower's direct testimony to which Johnson's thirty-sixth and thirty-eighth exceptions were taken. This testimony reveals that while defendants were engaged in a conversation at Sam Stanback's home in Montgomery County, Stanback came into the room with a pistol and stated that he bought it from Mr. Hall for sixty dollars. Later, Brower testified that this same pistol was the one used by Johnson during the robbery. Defendant Johnson contends this testimony should have been excluded as hearsay. The contention is without merit. Brower's testimony was based upon his own observations and thus was not objectionable as hearsay. *See* 1 Stansbury, North Carolina Evidence § 138 (Brandis rev. 1973). Moreover, Johnson interposed no objection or motion to strike regarding Brower's unresponsive revelation that Stanback said he bought the pistol from Mr. Hall, which was the only portion of the challenged testimony that conceivably falls under the proscription of the hearsay rule. Since Johnson thoroughly cross-examined Brower after his direct testimony, he was accorded his constitutional right of confrontation. *See*

*State v. Wright, supra.* This testimony concerning the identity of the pistol was competent to identify the perpetrators of the crime, as well as to show a design or plan, *see State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561 (1970), and did not constitute inadmissible hearsay evidence. This contention is overruled.

[24] By his fourth argument under this assignment, defendant Johnson contends the trial court erroneously allowed the State over objection to cross-examine him regarding his prior criminal convictions without limiting instructions to the jury at the time the testimony was admitted. He also contends the State was permitted to ask leading and irrelevant questions and to badger him on cross-examination. With regard to the first contention, the record in fact reveals that defendant was never subjected to cross-examination regarding prior criminal convictions. He was asked if he was familiar with robbery. No objection was interposed to this question, and the defendant replied, "No, sir." No limiting instruction was requested. Under these circumstances, there was no prejudicial error. This is true with regard to the second contention as well. These contentions have no merit.

[25] Defendant Johnson's final contention under this assignment is that the trial court erred in permitting Mrs. Hall to make an in-court identification of defendant Johnson as the robber who initially brandished the pistol and announced the holdup. Johnson argues that this identification was tainted by an impermissibly suggestive lineup. The record reveals, however, that after a voir dire hearing, the trial judge made findings of fact and concluded that the lineup procedure was not impermissibly suggestive or conducive to misidentification. The court further concluded that Mrs. Hall's in-court identification of Johnson was of independent origin, based on her observations of him during the commission of the crime. Since these findings on voir dire are supported by competent evidence, they are conclusive on this appeal. *State v. Curry,* 288 N.C. 660, 220 S.E. 2d 545 (1975) ; *State v. Harris,* 279 N.C. 307, 182 S.E. 2d 364 (1971). There was no error in the admission of Mrs. Hall's in-court identification of defendant Johnson.

We have examined the record with the care commensurate with the seriousness of the crime committed and the severity of the sentences imposed. Defendants have been convicted of first degree murder in a fair trial free from prejudicial error. The convictions must therefore be upheld.

State v. Brower

**[26]**  The record shows that the jury in each case returned a verdict of "guilty of the felony of murder in the first degree." The jury was polled and each juror stated that his verdict was guilty of the felony of murder in the first degree and that he still assented thereto.

Notwithstanding the verdicts, each judgment contains the following erroneous recital:

> "Thereupon at the July 21, 1975, term of Superior Court for the County of Montgomery a jury was duly summoned, selected, sworn and empanelled, which jury after hearing the evidence, arguments of counsel and the charge of the Court, returned for their verdict that the defendant, [naming him], *shall suffer the penalty of death by asphyxiation.*" (Emphasis added.)

To the end that the judgments may be corrected to speak the truth, this case is remanded to the Superior Court of Montgomery County with directions to proceed as follows:

1. The presiding judge of the Superior Court of Montgomery County will cause to be served on the defendants Charles Alvin Brower and James Cannon Johnson, and on their attorneys of record, notice to appear during a session of said superior court at a designated time, not less than ten days from the date of the order, at which time, in open court, the defendants being present in person and being represented by their attorneys, the presiding judge, based on the verdicts of guilty of the felony of murder in the first degree returned by the jury at the trial at the 21 July 1975 Session of Montgomery Superior Court, will correct the judgments heretofore pronounced so that each judgment correctly reflects the verdict rendered by the jury and the death sentence imposed by the court.

2. The presiding judge of the Superior Court of Montgomery County will issue a writ of habeas corpus to the official having custody of defendants Charles Alvin Brower and James Cannon Johnson to produce them in open court at the time and for the purpose of being present when the judgments are corrected.

No error in the trial.

Remanded for correction of judgments.