STATE OF NORTH CAROLINA v. STEPHEN DOUGLAS SIMMONS

STATE OF NORTH CAROLINA v. HAL STACEY HALLMAN

No. 8325SC60

(Filed 6 December 1983)

**1. Criminal Law § 92.5— motion for severance improperly denied**

In prosecutions for trafficking in a controlled substance, the trial judge erred in denying defendant Hallman's motion for severance where defendant Simmons asserted an entrapment defense in which he testified that he was pressured into committing the offense by a police informant, where defendant Hallman did not testify because of a perceived weak case against him, and where in fact, the case in chief against Hallman, was not only circumstantial, but it was also sparse. G.S. 15A-927(c)(2).

**2. Constitutional Law § 48; Criminal Law § 23— failure to inform client of plea bargain offer—ineffective assistance of counsel**

A failure to inform a client of a plea bargain offer constitutes ineffective assistance of counsel absent extenuating circumstances. Where, because of his attorney's misunderstanding concerning a plea bargain offer, defendant was denied the opportunity to accept a plea offer, which, according to his affidavit, he would have accepted, defendant was clearly prejudiced by his attorney's failure to inform him of the offer and the case should be remanded for a new trial.

APPEAL by defendants from *Clifton E. Johnson, Judge.* Judgments entered 24 June 1982 in Superior Court, CALDWELL County. Heard in the Court of Appeals 28 September 1983.

Defendants were indicted and convicted in a joint trial of trafficking in a controlled substance, to wit: marijuana. They were each sentenced to five years in prison.

*Attorney General Rufus Edmisten, by Associate Attorney Floyd M. Lewis, for the State.*

*Rodney S. Toth, for defendant Stephen Douglas Simmons.*

*Beverly T. Beal, P.A., by Beverly T. Beal, for defendant Hal Stacey Hallman.*

BECTON, Judge.

I

The dispositive issues on appeal relate to the joinder of defendants' cases for trial and to effective assistance of counsel. Both defendants have appealed, but because we are granting defendant Simmons's motion for appropriate relief, we need not consider the merits of his appeal.

II

The State presented evidence tending to show that on 7 January 1982, around 7:00 P.M., Raymond Buff arrived at the residence of Clyde Coulter, and noticed a Volkswagen Beetle parked adjacent to the house. Shortly afterward, defendant Hal Hallman arrived at the residence, talked with Coulter for a while, and left. Approximately fifteen minutes after Hallman's departure, Buff and Coulter left. Buff drove the Volkswagen Beetle and Coulter drove a green station wagon which Buff had not seen upon his arrival. Buff and Coulter drove to an abandoned white house where Coulter left the station wagon. Coulter then drove the Volkswagen Beetle to a post office where he and Buff met Hallman and Charles Lay, who were in a Volkswagen Rabbit. Hallman and Coulter conversed, after which Coulter and Buff returned to the abandoned white house where they were subsequently joined by Hallman and Lay. Again Hallman and Coulter conversed. Shortly afterward, Hallman drove the green station wagon out of the driveway and was followed by the Volkswagen Rabbit and the Volkswagen Beetle to a Hickory parking lot where Hallman, Lay, and Coulter all got out and talked. Hallman returned from making a telephone call and talked again with Coulter and Lay, after which they all returned to their cars and left in the same procession until the lead green station wagon pulled over onto the shoulder of the road at a bridge. Hallman got into the Rabbit and the two vehicles proceeded to a convenience store where there was a parked yellow Capri containing defendant Stephen Simmons.

In the car with Simmons was S.B.I. Agent W. M. Campbell. Campbell testified that as he and Simmons were discussing the proposed purchase of 63 pounds of marijuana from Simmons, a bronze Volkswagen Rabbit and blue Volkswagen Beetle arrived in

the parking lot of the convenience store. Campbell nervously asked Simmons who those people were, and Simmons assured him that "everything was all right," that those people "were just friends." After talking with Hallman, who was a passenger in the Rabbit, Simmons returned and told Campbell that the vehicle carrying the marijuana ran out of gas at a bridge, and that the transaction could not be completed at the agreed upon wildlife access area. After Campbell balked at "doing the deal" at the abandoned vehicle, Simmons agreed to pick up the marijuana from the station wagon and deliver it to the access area.

Raymond Buff testified that he observed Simmons remove some garbage bags from the station wagon, and that he and Coulter followed Simmons to the wildlife access area. When Simmons opened the rear of the car, exposing the large garbage bags, law enforcement officers raided the vehicle.

Simmons, Buff, and Coulter were arrested at the scene. Hallman and Lay were arrested at the convenience store. The large garbage bags contained 63 one-pound bags of a green vegetable matter, subsequently analyzed to be marijuana.

Defendant Hallman did not testify and presented no evidence, except to show, through cross-examination, that he was not at the access area, that no marijuana was found on his person, and that his fingerprints were not found on the bags. Defendant Simmons presented evidence that an informant, against whom the State had agreed to drop charges, pressured him into committing the offense.

### III

#### *Defendant Hallman's Appeal*

[1] Defendant Hallman contends that the trial court erred in denying his motion for severance of his trial from that of Simmons. For the following reasons, we agree and grant Hallman a new trial.

A trial judge's ruling on a motion for severance is discretionary and will not be disturbed on appeal unless there is a showing that a defendant has been denied a fair trial by joinder. *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976). Each case turns on its own facts, however, and an abuse of discretion may

be shown when the defenses of the co-defendants are antagonistic, and "the conflict in the defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, a defendant was denied a fair trial." *State v. Nelson*, 298 N.C. 573, 587, 260 S.E. 2d 629, 640 (1979); N.C. Gen. Stat. § 15A-927(c)(2) (1978).

Defendant Simmons asserted an entrapment defense in which he testified that he was pressured into committing the offense by a police informant. On the other hand, Hallman did not testify because of a perceived weak case against him.

The State's evidence, in its case in chief against Hallman, was not only circumstantial, but it was also sparse. Other than Buff's and S.B.I. Agent Campbell's testimony that, on a couple of different occasions, they saw, but did not hear, Hallman talk with Coulter or Simmons, and Buff's further testimony that Hallman was one of two people he saw driving the green station wagon on the night in question, no direct references to Hallman were made in the State's case. Of course, S.B.I. Agent Campbell was allowed to testify over Hallman's objection that Simmons told him (Campbell) that "the vehicle that had the marijuana in it had run out of gas and was located at the bridge." It is also true that Hallman, according to Buff, was the person driving the green station wagon when it ran out of gas on a bridge. But it was dark at all relevant times the green station wagon was being driven; neither Buff nor Campbell ever looked inside the green station wagon; and the green station wagon was left unobserved for a period of time. Further, the facts and declarations of Coulter and Simmons provided the State with no additional ammunition against Hallman since the parties were not charged with conspiracy.

The State's strongest case against Hallman was presented when co-defendant Simmons testified. Simmons first sought to show that he was entrapped by a police informant, Bruce Garavagila, who, incidentally, owned the green station wagon. Simmons later testified that he had talked with Hallman at the convenience store about the plan—the dope deal. Hallman told him that the station wagon had run out of gas and that Simmons had to go get it. Hallman had also advised him that Coulter and Buff would be there. As a result of his conversation with Hallman, Simmons drove to the abandoned station wagon and re-

trieved the garbage bags. (Note—Agent Campbell had already testified that Simmons told him, after talking with Hallman, that the station wagon carrying the marijuana had run out of gas.)

Had the trials not been joined, the jury may not have heard the foregoing testimony against defendant Hallman. In a separate trial, Simmons could not have been compelled to testify against Hallman, and Campbell's testimony would have been inadmissible. The evidence at trial against Hallman was circumstantial. There was no evidence that marijuana was in the station wagon when he drove it, and the evidence showed that the station wagon was abandoned, and left unobserved, for a period of time. Hallman was not at the access area when the raid occurred and the marijuana was seized from Simmons's Capri. No marijuana was found on Hallman's person and his fingerprints were not on the bags.

For the foregoing reasons, we conclude that Hallman was denied a fair trial by the joinder. Because we are ordering a new trial, we need not consider Hallman's remaining assignments of error as they are not likely to recur at a new trial.

IV

*Defendant Simmons's Motion for Appropriate Relief*

[2]   Defendant Simmons contends that he was denied effective assistance of counsel because his attorney did not advise him of a plea bargain offer.

According to affidavits filed by the assistant district attorney prosecuting this case and by counsel representing three co-defendants, they were all present, along with counsel representing defendant Simmons, at a pre-trial conference in Judge Johnson's chambers at which defendants Hallman and Simmons were offered the opportunity to plead guilty to felonious possession of marijuana. No defendants were present at this conference. According to the affidavit filed by counsel for defendant Simmons, when counsel questioned why defendant Hallman was being offered a plea to felonious possession and not his client, the district attorney replied, "If I gave it to Bev's client (Hallman), I would give it to you." Simmons's counsel interpreted this statement to mean that the offer to his client was conditioned upon Hallman's accepting the offer. Since Hallman did not accept, he did not communicate any offer to his client. The affidavits filed by the other

parties present, however, indicate that the offer was not conditional. There is nothing in the affidavits to indicate that Judge Johnson would not have accepted the plea.

After the trial began, however, Simmons's counsel discovered that that offer was not conditioned upon Hallman's accepting it, and, being confident his client would accept the offer, he asked the assistant district attorney to allow his client to plead guilty to felonious possession, but the assistant district attorney refused because the trial had started.

Simmons swore in his affidavit that he would have taken the offer had he known of it. He had inquired about the possibility of a plea bargain but his attorney told him that the district attorney was not plea bargaining. Before trial he became upset when he discovered co-defendants Coulter and Lay had been offered, and had accepted, plea bargains, while he had not.

Plea bargaining has been recognized as "an essential component of the administration of justice." *Santobello v. New York*, 404 U.S. 257, 260, 30 L.Ed. 2d 427, 432, 92 S.Ct. 495, 498 (1971). In North Carolina, plea bargaining is expressly permitted, and the trial judge is allowed to participate. N.C. Gen. Stat. § 15A-1021 (Supp. 1981).

A defense attorney in a criminal case has a duty to advise his client fully on whether a particular plea to a charge is desirable, but the ultimate decision on what plea to enter remains exclusively with the client. N. C. Code of Professional Responsibility EC 7-7 (1981). "A lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations." *Id.* EC 7-8. One such relevant consideration is the availability of a plea bargain—in order for a defendant to make a fully informed decision on what plea to enter, he must be made aware of any possible plea bargain. A lawyer thus is ethically bound to advise his client of a plea bargain offer.

Other jurisdictions hold that an attorney's failure to advise his client of a plea bargain offer amounts to ineffective assistance of counsel unless counsel effectively proves that he did inform his client of the offer or provides an adequate explanation for not advising his client of the offer. Annot., 8 A.L.R. 4th 660 (1981).

One such case holding that an attorney's failure to inform his client of a plea bargain offer constituted ineffective assistance of counsel is *Lyles v. State*, 178 Ind. App. 398, 382 N.E. 2d 991 (1978), in which the attorney ostensibly left the plea negotiations in the judge's chambers to inform his client of a plea bargain offer but never actually informed his client of the offer. The Indiana court derived counsel's minimal duty from the A.B.A.'s *Standards Relating to the Defense Function* § 6.2(a) (App. Draft 1971). The pertinent standard remains unchanged in its current edition:

In conducting discussions with the prosecutor the lawyer should keep the accused advised of developments at all times and *all proposals made by the prosecutor should be communicated promptly to the accused.* (Emphasis added.)

*1 Standards for Criminal Justice* Standard 4-6.2(a) (2d ed. 1980). The commentary to Standard 4-6.2 states:

Because plea discussions are usually held without the accused being present, *there is a duty on the lawyer to communicate fully to his client the substance of the discussions.* It is important that the accused be informed of proposals made by the prosecutor; *the accused, not the lawyer, has the right to pass on prosecution proposals,* even when a proposal is one which the lawyer would not approve. If the accused's choice on the question of a guilty plea is to be an informed one, he must act with full awareness of his alternatives, including any that arise from proposals made by the prosecutor. (Emphasis added.) *Id.*

*Id.* Our Supreme Court recently adopted the *McMann* standard for gauging effective assistance of counsel. *State v. Weaver*, 306 N.C. 629, 295 S.E. 2d 375 (1982). The *McMann* standard tests "whether counsel's performance was 'within the range of competence demanded of attorneys in criminal cases'." *Id.* at 641, 295 S.E. 2d at 382 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 25 L.Ed. 2d 763, 773, 90 S.Ct. 1441, 1449 (1970)). As apparent from the foregoing discussion, a criminal defense attorney should advise his clients of plea bargain offers. We, therefore, hold that a failure to inform a client of a plea bargain offer constitutes ineffective assistance of counsel absent extenuating circumstances.

In the present case, defendant Simmons's counsel appeared to be sincere in his belief that the offer was conditional. Once

counsel discovered the true facts, he attempted to revive the offer but the district attorney refused. Because of his attorney's misunderstanding, Simmons was denied the opportunity to accept the plea offer, which, according to his affidavit, he would have accepted. Simmons was clearly prejudiced by his attorney's failure to inform him of the offer.

Felonious possession of marijuana, to which Simmons was offered a chance to plead, is a Class I felony, which carries a presumptive term of two years. N.C. Gen. Stat. § 90-95(d)(4) (Supp. 1983); N.C. Gen. Stat. § 15A-1340.4(f)(7) (Supp. 1981). According to defendant's affidavit, his only prior conviction was for misdemeanor possession of marijuana. In contrast, trafficking in excess of 50 pounds, but less than 100 pounds of marijuana carries a mandatory minimum sentence of five years, with no eligibility for early release, parole or probation. N.C. Gen. Stat. § 90-95(h)(1)(a) (Supp. 1983); N.C. Gen. Stat. § 90-95(h)(5) (Supp. 1983). Of those indicted, only the two who were tried, Hallman and Simmons, received five-year sentences. Charges were dropped against Buff. Lay was allowed to plead no contest to misdemeanor possession. Coulter was allowed to plead guilty to felonious possession of marijuana, for which he received a split sentence, six months active and eighteen months probation.

We do not believe that defendant should be unjustly penalized for his attorney's misinterpretation, however sincere. Consequently, we are vacating the judgment and conviction and remanding the case for a new trial.

Because of our disposition in this case, we need not consider defendant Simmons's remaining arguments in his motion or the merits of his appeal.

V

The results are:

New trials for defendants Hallman and Simmons.

Judges WHICHARD and BRASWELL concur.