IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-526

No. COA21-286

Filed 2 August 2022

Harnett County, Nos. 01 CRS 920, 4612

STATE OF NORTH CAROLINA

v.

WILLIAM MCDOUGALD

Appeal by Defendant from Order entered 26 November 2019 by Judge C. Winston Gilchrist in Harnett County Superior Court. Heard in the Court of Appeals 8 February 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Nicholas R. Sanders, for the State.*

*Christopher J. Heaney for defendant-appellant.*

*Juvenile Law Center, by Marsha L. Levick, Aryn Williams-Vann, Katrina L. Goodjoint, and Riya Saha Shah, and Phillips Black, Inc., by John R. Mills, for amici curiae.*

HAMPSON, Judge.

## Factual and Procedural Background

¶ 1        William McDougald (Defendant) appeals from an Order denying his Motion for Appropriate Relief (MAR). Relevant to this appeal, the Record before us tends to reflect the following:

¶ 2        On 12 October 2001, a jury returned a verdict finding Defendant guilty of second-degree kidnapping, misdemeanor breaking or entering, and assault on a female. Defendant had two prior convictions including: a guilty plea to second degree kidnapping, a class E felony, with judgment entered on 16 May 1984 when Defendant was sixteen years old; and a no contest plea to one count of second-degree sexual offense (class H felony), two counts of common law robbery (class D felonies), and one count of armed robbery (a class D felony) with judgment entered on 1 February 1988. Due to these prior felonies, a jury found Defendant guilty of violent habitual felon status on 14 November 2001. On the same day, as required by the violent habitual felon statute, the trial court imposed the mandatory sentence of life without parole (LWOP). Defendant appealed from the Judgment and this Court found no error by Opinion entered on 20 May 2008. *See State v. McDougald*, 190 N.C. App. 675, 661 S.E.2d 789 (2008) (unpublished).

¶ 3        Subsequently, on 26 June 2017, Defendant filed a MAR in Harnett County Superior Court asserting the mandatory sentence of LWOP for violent habitual felons, as applied to him, violated Defendant's Eighth Amendment rights where one of the predicate violent felony convictions was obtained when Defendant was a juvenile and that the LWOP sentence was disproportionate. On 22 May 2018, Defendant amended his MAR to also include claims of ineffective assistance of trial counsel during plea negotiations and ineffective assistance of appellate counsel.

Defendant requested the trial court to vacate his convictions for second-degree kidnapping and violent habitual felon status.

¶ 4        On 9 August 2019, the trial court held a hearing on the MAR including both the Eighth Amendment and ineffective assistance of counsel claims. Prior to the hearing, the parties stipulated the trial court could determine the Eighth Amendment claims as a matter of law without the introduction of evidence. Defendant elected to abandon his claim for ineffective assistance of appellate counsel during the hearing.

¶ 5        In support of his ineffective assistance of trial counsel claim, Defendant called Mark Key (Key), his trial attorney, to testify. Key testified Defendant's file was destroyed as part of a routine purge, and to prepare for this hearing, Key tried to remember "as much as I could" by reviewing the trial transcript and the time sheet Key kept during Defendant's trial. Based on this time sheet from 2001, Key testified he visited Defendant on 25 April 2001 and told Defendant the prosecutor was offering a plea deal in which Defendant would serve a sentence of approximately twelve to thirteen years. At the time of this meeting, Defendant had not yet been indicted for violent habitual felon status; however, the charge was pending. Key testified he did not explain or mention the mandatory punishment of LWOP for the pending violent habitual felon status charge during this meeting. Defendant rejected the plea deal. Thereafter, the State obtained a superseding indictment for violent habitual felon

status on 14 May 2001. Key testified he did not meet with Defendant to discuss the potential consequences of a conviction for violent habitual felon status until the morning of the trial on the substantive felonies, 1 October 2001. At this time, Key told Defendant there was a potential punishment of LWOP depending on the outcome of the trial but was "not sure [he] told [Defendant] it was mandatory [LWOP]." Key admitted Defendant might not have understood what he meant.

¶ 6    Defendant also called Attorney Michael G. Howell (Howell) who had almost twenty years of experience representing clients facing the death penalty and LWOP in North Carolina. Howell testified Key's performance was "deficient" because Key failed to "fully explain[] to [Defendant] on 25 April 2001 the full ramifications of the plea offer and the rejection of it[,]" including exposure to mandatory LWOP sentence.

¶ 7    On 26 November 2010, the trial court entered an Order denying the MAR. The Order makes the following relevant Findings of Fact:

> 11. On October 1, 2001, Defendant stated during a colloquy with Judge Bowen before trial began that Mr. Key "on several occasions he [Key] brought-he told me that the DA brought up . . . habitual felony charges on me."
>
> 12. Defendant further stated during the same colloquy, "First time I seen him (Mr. Key) when I got down here to Superior Court, second time, third time, and fourth time I seen him when I was offered a plea bargain."
>
> 13. Defendant further stated on the record on October 1, "Then I came back here, which was today and [Key tells me] . . . If you don't go to trial you can take the plea bargain for thirteen years

and a half . . . ."

14. Defendant also stated on the record on October 1, "I'm already facing my life with no parole in prison."

15. At no time during his colloquy with the court on October 1st did Defendant express a desire to accept the plea offer of thirteen and one-half years which had been tendered by the State.  There is no credible evidence before the court that Defendant expressed to anyone, including his lawyer or the court, at any time prior to his conviction and final sentencing that he wished to accept such plea offer or any plea offer that was made by the State.

19. On November 14, 2001 the trial court denied Defendant's Motion to Dismiss indictment.  Judge Bowen found in the order denying the Motion to Dismiss that "defendant and [his[ counsel were well aware of the Violent Habitual Felon indictment . . . far in advance of the trial of the underlying felony" on October 1, 2001.

23. Eighteen years have passed since the events at issue.  Mr. Key did not have a perfect or complete recollection of all his statements to his client.

25. The Defendant was informed that he was subject to a sentence of life without parole.  The credible evidence does not establish the Defendant was not informed by Mr. Key well in advance of the first day of his trial, October 1, 2001, that he faced a mandatory sentence of life imprisonment without parole as a violent habitual felon.

27. The credible evidence does not establish that Defendant lacked a full and informed understanding well in advance of October 1, 2001, of the impact of the violent habitual felon charge, of its potential consequences and of the consequences of rejecting the plea arrangement which had been offered by the State.  The credible evidence does not establish that the defense counsel failed to fully, timely, and competently advise Defendant on these issues.  The credible evidence does not establish that defense

counsel's representation was objectively unreasonable in any way.

28. The prior convictions used to establish Defendant's status as a violent habitual felon were as follows: (1) Second Degree Kidnapping, date of offense March 14, 1984, conviction date May 16, 1984 and (2) Second Degree Sexual Offense, offense date November 3, 1987 and conviction date February 1, 1988.

29. Defendant's date of birth was February 24, 1968. Defendant was sixteen years of age at the time he committed and was convicted of the predicate offense of Second Degree Kidnapping in 1984. Defendant was over the age of eighteen when convicted of the second predicate felony of Second Degree Sexual offense in 1988.

33. The credible evidence does not establish that the frequency, content or timing of attorney Mark Key's communications with Defendant were objectively unreasonable. The credible evidence does not establish that the methods Mr. Key used to communicate with Defendant about his case were objectively unreasonable.

34. The credible evidence does not demonstrate a reasonable probability that but for any error or insufficiency in the frequency, timing, content or methods of communication used by attorney Key with Defendant that the outcome of the case would have been any different or that Defendant would have accepted a plea to a sentence of less than life without parole.

The Order also makes the following relevant Conclusions of Law:

2. Defendant's sentence of life without parole was not imposed for conduct committed before Defendant was eighteen years of age in violation of *Graham v. Florida*, 560 U.S. 48 (2010), *Miller v. Alabama*, 132 S. Ct. 2455 (2012), or *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). Defendant's sentence did not violate the constitutional prohibitions against mandatory sentences of life without parole for juveniles. Defendant's sentence is therefore not unconstitutional as applied to the Defendant.

3. No inference of disproportionality arises from a comparison of the gravity of the offense and the severity of the sentence in question.

4. As applied to Defendant, a sentence of life without parole is not grossly disproportionate to the conduct punished.

5. Defendant's sentence does not violate the Eighth Amendment to the Constitution of the United States.

7. Defendant has failed to prove, by a preponderance of the evidence, that the performance of his trial counsel, Mark Key, was objectively unreasonable or deficient.

8. In addition, and in the alternative, the Defendant has failed to establish that there is a reasonable probability that but for any unprofessional error committed by Mr. Key the result of the proceeding would have been any different.

9. There is no reasonable probability that Defendant would have accepted the plea offer made by the State but for any unprofessional error by attorney Key.

¶ 8 On 20 November 2020, Defendant filed a Petition for Writ of Certiorari in this Court seeking review of the 26 November 2019 Order denying his MAR. This Court allowed Defendant's Petition for Writ of Certiorari in an Order entered 6 January 2021 to permit appellate review of the trial court's Order.

## **Issues**

¶ 9 The issues on appeal are whether: (I) the trial court erred in concluding Key acted reasonably and without prejudice during plea negotiations; (II) the trial court erred in upholding a mandatory LWOP sentence that relies, in part, on a conviction

for a violent felony committed while Defendant was a juvenile; and (III) the trial court erred in concluding Defendant's sentence is not disproportionate.

## Analysis

¶ 10 This Court reviews a trial court's order denying a MAR to determine "whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *State v. Hyman*, 371 N.C. 363, 382, 817 S.E.2d 157, 169 (2018) (quotation marks and citation omitted). "[T]he trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quotation marks and citation omitted). Unchallenged findings of fact are "presumed to be supported by competent evidence and are binding on appeal." *Hyman,* 371 N.C. at 382, 817 S.E.2d at 169. We review conclusions of law de novo. *Id.* Under de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (quotation marks and citations omitted).

## I.    Ineffective Assistance of Counsel

¶ 11 Defendant contends the trial court erred by concluding Key acted reasonably during plea negotiations and by concluding Key's conduct did not prejudice Defendant and, therefore, did not provide Defendant ineffective assistance of counsel. To prevail

on a claim for ineffective assistance of counsel, a defendant must satisfy a two-part

test:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second, the
> defendant must show that the deficient performance prejudiced
> the defense. This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.

*State v. Banks*, 367 N.C. 652, 655, 766 S.E.2d 334, 337 (2014) (quoting *Strickland v.*

*Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). *See also, Hill v.*

*Lockhart*, 474 U.S. 52, 57, 88 L. Ed. 2d 203, 209 (1985) (applying the two-part

*Strickland* test to ineffective-assistance claims arising out of the plea process).

### A. <u>Reasonableness of Key's Performance</u>

¶ 12        Defendant contends Key's testimony, his contemporaneous timesheet,

Defendant's affidavit, and the trial transcript, shows Key did not adequately inform

Defendant he was subject to mandatory LWOP prior to the morning of 1 October

2001, and a reasonable attorney would have explained the potential consequences of

rejecting the plea deal prior to the morning before trial on the underlying felony.

Thus, Defendant contends Key's performance was constitutionally deficient.

¶ 13        In the context of pleas, "deficient performance may be established by showing

that counsel's representation fell below an objective standard of reasonableness."

*Hill,* 474 U.S. at 57, 88 L. Ed. 2d at 209 (citing *Wiggins v. Smith*, 539 U.S. 510, 521, 156 L. Ed. 2d 471, 484 (2003)). "An attorney's failure to inform his client of a plea bargain offers amounts to ineffective assistance unless counsel effectively proves that he did inform his client of the offer or provides an adequate explanation for not advising his client of the offer." *State v. Simmons*, 65 N.C. App. 294, 299, 309 S.E.2d 493, 497 (1983). Moreover, "[a] defense attorney in a criminal case has a duty to advise his client fully on whether a particular plea to a charge is desirable, but the ultimate decision on what plea to enter remains exclusively with the client." *Id.*

¶ 14    Nevertheless, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-695. Moreover, "because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and defendants have the burden of overcoming this presumption. *Id.*

¶ 15    Here, the trial court's Findings indicate Defendant failed to meet his burden to overcome the "strong presumption" Key's performance was reasonable. For example, the trial court found: the evidence did not establish Defendant lacked a full and informed understanding well in advance of trial of the impact of the violent

habitual felon charge including its potential consequences and the consequences of rejecting the plea deal; the evidence did not establish Key failed to fully, timely, and competently advise Defendant of the desirability of the plea deal; and the evidence did not establish Key's performance was objectively unreasonable in any way. Moreover, although Howell testified that a reasonable attorney would have informed Defendant he was facing mandatory LWOP, Key could not remember whether "[he] told [Defendant] it was mandatory [LWOP]" and was not sure Defendant understood the full ramifications. Indeed, Key's incomplete or imperfect recollection of all his statements to his client in addition to the passage of eighteen years and the destruction of Key's case file including a complete record of written communications with Defendant and file notes—as found by the trial court—prevented the trial court from "reconstruct[ing] the circumstances of counsel's challenged conduct and [] evaluat[ing] the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-695.

¶ 16        Furthermore, a review of the Record shows Key met with Defendant on 25 April 2001, before the trial on 1 October 2001, to discuss the plea offer with Defendant, and at the very least, informed Defendant he was facing the potential of LWOP depending on the outcome of the trial. Indeed, Defendant acknowledged he knew he was "facing my life with no parole in prison" in discussions with the trial court on 1 October 2001. Thus, the evidence supports the trial court's Findings that

Defendant was informed of the plea deal before trial, knew of the possibility of LWOP, and Key fully, timely, and competently advised Defendant of the desirability of the plea deal. Based on these Findings, the trial court did not err by determining Key's performance was not objectively unreasonable.

B. <u>Prejudicial Effect of Key's Performance</u>

¶ 17    Since the trial court properly concluded Key's performance was not objectively unreasonable, we do not need to reach the issue of whether Key's performance was prejudicial. *See State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985) (quoting *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 690) ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). Nevertheless, for purposes of reviewing each of the arguments presented upon Defendant's MAR, and assuming arguendo Key's performance was constitutionally deficient, Defendant also contends the evidence—as reflected in Key's testimony and Defendant's affidavit— establishes that if Key had ensured Defendant "understood [the] violent habitual felon status and its mandatory punishment, he would have taken [the] plea . . ." Thus, Defendant argues the trial court erred in concluding, in the alternative, Key's performance did not otherwise prejudice Defendant.

¶ 18    "The second, or 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."

*Hill*, 474 U.S. at 58-59, 88 L. Ed. 2d at 210. To show prejudice from ineffective assistance of counsel where a plea offer has been rejected,

> defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. *Cf. Glover v. United States*, 531 U.S. 198, 203, 121 S. Ct. 696, 148 L. Ed. 2d 604 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance").

*Missouri v. Frye,* 566 U.S. 134, 147, 182 L. Ed. 2d 379, 392 (2012). Moreover, "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 137 S. Ct. 1958, 1967, 198 L. Ed. 2d 476, 487 (2017). "Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

¶ 19       Here, the trial court found Defendant never expressed to anyone a desire to accept the plea deal; knew he faced a sentence of LWOP, but still declined to accept a plea bargain; and the evidence did not demonstrate a reasonable probability Defendant would have accepted a plea. Thus, evidence in the Record supports the trial court's Findings. In turn, those Findings support the determination Defendant had not established he was prejudiced by Key's allegedly deficient performance.

Therefore, the trial did not err in concluding Defendant failed to establish his ineffective assistance of counsel claim. *See Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826. Consequently, the trial court did not err in denying Defendant's MAR based on a claim of ineffective assistance of counsel.

## II.  Application of the Violent Habitual Felon Status Law

¶ 20  Defendant contends the application of the violent habitual felon status law— and specifically its mandatory LWOP sentence—violates the prohibition against cruel and unusual punishment contained in the Eighth Amendment of the United States Constitution. Specifically, Defendant contends the trial court's reliance on an offense committed while Defendant was under the age of eighteen as a predicate offense in sentencing Defendant to mandatory LWOP violates the constitutional constraints embodied in *Miller v. Alabama*, 567 U.S. 460, 183 L. Ed. 2d 407 (2012), which prohibits the imposition of mandatory LWOP sentences on juvenile offenders.

¶ 21  The Eighth Amendment to the United States Constitution states "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted[,]" U.S. Const. amend. VIII, and is made applicable to the States by the Fourteenth Amendment. *Id.* amend. XIV. The Constitution of North Carolina similarly states, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." N.C. Const. art. I, § 27. "To determine whether a punishment is cruel and unusual, courts must look beyond

historical conceptions to the evolving standards of decency that mark the progress of a maturing society." *Graham v. Florida*, 560 U.S. 48, 58, 176 L. Ed. 2d 825, 835 (2010). "The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances." *Id.* However, generally punishments are "challenged not as inherently barbaric but as disproportionate to the crime." *Id.* Indeed, "the basic precept of justice [is] that punishment for crime should be graduated and proportioned to the offense." *Kennedy v. Louisiana*, 554 U.S. 407, 419, 171 L. Ed. 2d 525, 538 (citations and quotations omitted*), opinion modified on denial of reh'g*, 554 U.S. 945, 171 L. Ed. 2d 932 (2008).

> The Court's cases addressing the proportionality of sentences fall within two general classifications. The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty.

*Graham,* 560 U.S. at 59, 176 L. Ed. 2d at 836.

¶ 22 Generally, the second line of analysis is applied in the death penalty context; however, the Supreme Court applied a categorical ban on mandatory sentences of LWOP for juvenile offenders in *Graham* and *Miller*. The Court reasoned this categorical rule was necessary because "children are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471, 183 L. Ed. 2d at 418. Moreover, "because juveniles have diminished culpability and greater prospects for

reform . . . they are less deserving of the most severe punishments." *Id.* (quoting

*Graham*, 560 U.S. at 68, 176 L. Ed. 2d at 841). Thus, the *Miller* Court held mandatory

LWOP for juveniles was violative of the Eighth Amendment as

> [i]t prevents taking into account the family and home environment that surrounds [the juvenile]—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. . . . Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. *See, e.g., Graham, 560 U.S.*, at 78, 130 S. Ct. 2011, 176 L. Ed. 2d 825 ("[T]he features that distinguish juveniles from adults also put them at a significant disadvantage in criminal proceedings"); *J.D.B. v. N.C.*, 564 U.S. 261, 269, 131 S. Ct. 2394, 180 L. Ed. 2d 310 (2011) (discussing children's responses to interrogation). And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Id.* at 477–478, 183 L. Ed. 2d at 423. Nevertheless, the *Miller* Court did not preclude

a sentence of LWOP for juveniles so long as the court considers a youthful offender's

"chronological age and its hallmark features—among them, immaturity, impetuosity,

and failure to appreciate risks and consequences" before imposing a LWOP sentence.

*Id.*

¶ 23　　　　Here, Defendant asserts a categorical challenge to the sentencing practice of

using juvenile convictions as a predicate offense for violent habitual felon status.

Categorical challenges are subject to the following analysis:

> The Court first considers objective indicia of society's standards, as expressed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing practice at issue. Next, guided by the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose, the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution.

*Graham,* 560 U.S. at 61, 176 L. Ed. 2d at 837 (quotation marks and citations omitted).

¶ 24    North Carolina defines a violent habitual felon as "any person who has been convicted of two violent felonies . . . . '[C]onvicted' means the person has been adjudged guilty of or has entered a plea of guilty or no contest to the violent felony charge, and judgment has been entered thereon . . . ." N.C. Gen. Stat. § 14-7.7(a) (2021). "For purposes of this Article, 'violent felony' includes . . . Class A through E felonies." N.C. Gen. Stat. § 14-7.7(b)(1) (2021).

> A person who is convicted of a violent felony and of being a violent habitual felon must, upon conviction (except where the death penalty is imposed), be sentenced to life imprisonment without parole. . . . The sentencing judge may not suspend the sentence and may not place the person sentenced on probation.

N.C. Gen. Stat. § 14-7.12 (2021). This Court upheld the constitutionality of this legislation—colloquially known as the three-strikes law—more than twenty years ago in *State v. Mason*. *See State v. Mason*, 126 N.C. App. 318, 321, 484 S.E.2d 818, 820 (1997) (concluding the reasoning in *State v. Todd,* 313 N.C. 110, 118, 326 S.E.2d 249, 253 (1985), affirming the constitutionality of the habitual felon statute, N.C. Gen.

Stat. §§ 14-7.1 through 14-7.6, "equally applies to the violent habitual felon statute."), *cert. denied*, 354 N.C. 72, 553 S.E.2d 208 (2001). In *State v. Todd*, our Supreme Court determined the habitual felon law does not deny a defendant due process and equal protection, freedom from ex post facto laws, freedom from cruel and unusual punishment, and freedom from double jeopardy because "these challenges have been addressed and rejected by the United States Supreme Court." *State v. Todd*, 313 N.C. 110, 117, 326 S.E.2d 249, 253 (1985). Indeed, the United States Supreme Court has repeatedly held recidivist laws do not violate the Eighth Amendment because:

> the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.' *Gryger v. Burke*, 334 U.S. 728, 732, 92 L. Ed. 1683, 68 S. Ct. 1256 (1948). *See also Spencer v. Texas*, 385 U.S. 554, 560, 17 L. Ed. 2d 606, 87 S. Ct. 648 (1967); *Oyler v. Boles*, 368 U.S. 448, 451, 7 L. Ed. 2d 446, 82 S. Ct. 501 (1962); *Moore v. Missouri*, 159 U.S. 673, 677, 40 L. Ed. 301, 16 S. Ct. 179 (1895) (under a recidivist statute, 'the accused is not again punished for the first offence' because " 'the punishment is for the last offence committed, and it is rendered more severe in consequence of the situation into which the party had previously brought himself' ").

*Witte v. United States*, 515 U.S. 389, 400, 132 L. Ed. 2d 351, 364 (1995).

¶ 25    Moreover, although the question of whether a juvenile-age conviction may count towards a three-strikes law that mandates a sentence of LWOP appears to be an issue of first impression in our state, a review of laws in other jurisdictions reveals North Carolina was not alone in its enactment of such a law. Indeed, between 1993

and 1995, twenty-four states enacted 'three strikes and you're out' laws with most of these laws mandating life sentences without the possibility of release. *See* John Clark et al., U.S. Dep't of Justice, NCJ 165369, Three Strikes and You're Out: A Review of State Legislation 1 (Research in Brief 1997). Courts in several of these states have recognized the counting of juvenile-age convictions as "strikes" where the defendant was charged and/or tried as an adult[1] even when the punishment under the three-strikes law is mandatory LWOP. *See, e.g., State v. Ryan*, 249 N.J. 581, 600–601, 268 A.3d 313, 322 (N.J. 2022); *McDuffey v. State,* 286 So. 3d 364 (Fla. 1st DCA 2019); *Wilson v. State*, 2017 Ark. 217, 521 S.W.3d 123, 128 (Ark. 2017); *Vickers v. State*, 117 A.3d 516, 519–20 (Del. 2015); *State v. Standard*, 351 S.C. 199, 569 S.E.2d 325, 326, 328–29 (S.C. 2002); *State v. Teas*, 10 Wn. App. 2d 111, 447 P.3d 606, 619–20 (Wash.

---

[1] The separate issue of whether a juvenile delinquency adjudication may be used as a predicate offense under a "Three Strikes Law" is more unsettled with the majority of jurisdictions preventing the use of juvenile adjudications in calculating prior offenses because juveniles in juvenile court have their cases adjudicated without a jury. Thus, these state courts reason, counting these offenses towards violent habitual felon status implicates *Apprendi. See Vanesch v. State*, 343 Ark. 381, 390, 37 S.W.3d 196, 2001 (Ark. 2001) (disallowing juvenile delinquency adjudications as predicate offenses for state's three strikes law); *Fletcher v. State*, 409 A.2d 1254, 1256 (Del. 1979) (same); *Paige v. Gaffney*, 207 Kan. 170, 170, 483 P.2d 494, 495 (Kan. 1971) (same); *State v. Brown*, 879 So. 2d 1276, 1288-90 (La. 2004) (same); *Commonwealth v. Thomas*, 1999 PA Super 301, ¶ 2, 743 A.2d 460, 461 (Pa. Super. Ct. 1999) (same); *State v. Ellis*, 345 S.C. 175, 179, 547 S.E.2d 490, 492 (S.C. 2001) (same); *State v. Maxey*, 2003 WI App 94, ¶ 14, 663 N.W.2d 811, 814 (Wis. Ct. App. 2003) (same). *But See People v. Davis*, 15 Cal. 4th 1096, 1100, 938 P.2d 938, 940–42 (Cal. 1997) (allowing juvenile adjudications to count as strikes under the state's three strikes law); *Williams v. State*, 994 So.2d 337, 339–40 (Fl. Ct. App. 2008) (same); *Lindsay v. State*, 102 S.W.3d 223, 226–27 (Tex. Ct. App. 2003) (same). Nevertheless, this issue is not before us and we do not decide it.

Ct. App. 2019), *review denied*, 195 Wn. 2d 1008, 460 P.3d 182 (Wash. 2020); *Commonwealth v. Lawson*, 2014 PA Super 68, 90 A.3d 1, 6-8 (Pa. Super. Ct. 2014). *Cf.* Tenn. Code Ann. § 40-35-120(e)(3) (providing that juvenile-age convictions in adult court count as predicate offenses so long as the conviction resulted in a custodial sentence).

¶ 26     In permitting juvenile-age convictions to count towards three strikes laws, these courts have concluded the reasoning of *Miller* is inapplicable in the case of an adult who commits a third violent felony. *See e.g. Ryan*, 249 N.J. at 601, 268 A.3d at 322. In support of this conclusion, these courts generally rely on the basic principle embodied in United States Supreme Court precedent that under recidivist statutes, the defendant is not punished for the first offense, but rather the punishment is a "stiffened penalty for the latest crime, which was considered to be an aggravated offense because it is a repetitive one." *See e.g. Id.* (quoting *Witte,* 515 U.S. at 400, 132 L. Ed. 2d at 364 (1995)).

¶ 27     Here, applying these general principles as found in United States Supreme Court precedent, North Carolina Supreme Court precedent, and in the persuasive precedent from other jurisdictions, the application of the violent habitual felon statute to Defendant's conviction of second-degree kidnapping, committed when Defendant was thirty-three years old, did not increase or enhance the sentence Defendant received for his prior second-degree kidnapping conviction, committed

when Defendant was sixteen. Rather, the violent habitual felon statute, and resulting LWOP sentence, applied only to the last conviction for second-degree kidnapping. *See State v. Wolfe*, 157 N.C. App. 22, 37, 577 S.E.2d 655, 665 (2003) ("Because defendant's violent habitual felon status will only enhance his punishment for the second-degree murder conviction in the instant case, and not his punishment for the underlying voluntary manslaughter felony, there is no violation of the ex post facto clauses."). As the Fourth Circuit explained in addressing whether violent felony convictions as a juvenile could be used towards a sentencing enhancement under the federal Armed Career Criminal Act:

> In this case, Defendant is not being punished for a crime he committed as a juvenile, because sentence enhancements do not themselves constitute punishment for the prior criminal convictions that trigger them. *See Rodriquez*, 553 U.S. at 385–86, 128 S. Ct. 1783. Instead, Defendant is being punished for the recent offense he committed at thirty-three, an age unquestionably sufficient to render him responsible for his actions. Accordingly, Miller's concerns about juveniles' diminished culpability and increased capacity for reform do not apply here.

*United States v. Hunter*, 735 F.3d 172, 176 (4th Cir. 2013).

¶ 28        Indeed, in this case, the trial court relied on these very principles in concluding: "Defendant's sentence of [LWOP] was not imposed for conduct committed before Defendant was eighteen years of age in violation of *Graham* . . ., *Miller* . . . or *Montgomery* . . . ." Thus, consistent with this analysis, the trial court correctly further

determined "Defendant's sentence did not violate the constitutional prohibitions against mandatory sentences of [LWOP] for juveniles." Therefore, the trial court, in turn, did not err by ultimately concluding "Defendant's sentence is therefore not unconstitutional as applied to Defendant." Consequently, the trial court did not err by denying Defendant's MAR on this ground.

### III.   Disproportionality of Mandatory Life Without Parole

¶ 29          Defendant finally contends the trial court erred in concluding Defendant's LWOP sentence is not disproportionate under the Eighth Amendment.

> Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

*State v. Ysaguire*, 309 N.C. 780, 786, 309 S.E.2d 436, 440–441 (1983). Moreover, "[o]nly in exceedingly unusual non-capital cases will the sentences imposed be so grossly disproportionate as to violate the Eighth Amendment's proscription of cruel and unusual punishment." *Id.* Indeed, our Court has previously "determined that the General Assembly 'acted within permissible bounds in enacting legislation designed to identify habitual criminals and to authorize enhanced punishment as provided.' " *Mason*, 126 N.C. App. at 321, 484 S.E.2d at 820 (quoting *Todd*, 313 N.C.

at 118, 326 S.E.2d at 253). Thus, in accordance with our decision in *Mason*, the trial court did not err in concluding Defendant's sentence of LWOP for second-degree kidnapping is not disproportionate under the Eighth Amendment. Therefore, the trial court did not err in denying Defendant's MAR on this basis.

## Conclusion

Accordingly, for the foregoing reasons, the trial court's Order denying Defendant's MAR is affirmed.

AFFIRMED.

Judges GORE and WOOD concur.